**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CONTINENTAL CASUALTY COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.:** |
| **vs.** | § | |
| | § | **2:07-CV-221-WHA** |
| | § | |
| **ALABAMA EMERGENCY ROOM** | § | |
| **ADMINISTRATIVE SERVICES, P.C.,** | § | |
| | § | |
| **Defendant.** | § | |

**MOTION TO COMPEL DEFENDANT TO PROVIDE FULL AND
COMPLETE RESPONSES TO DISCOVERY**

**COMES NOW** Plaintiff Continental Casualty Company, and respectfully moves this Honorable Court to compel Defendant Alabama Emergency Room Administrative Services, P.C. ("AERAS") to provide full and complete responses to Continental Casualty's First Interrogatories and First Requests for Production. As grounds for this Motion, Continental Casualty states as follows:

**A.     Introduction.**

This is an action for declaratory judgment seeking the recovery of premiums due on an assigned-risk workers' compensation policy issued by Plaintiff Continental Casualty to Defendant AERAS for the policy period of May 3, 2005 to May 3, 2006.[1] In its application for workers' compensation coverage, AERAS represented that it had only 7 persons engaged as "Hospital: Professional Employees," which could make Continental Casualty liable under the workers'

---

[1]The policy issued to AERAS was ultimately canceled by the insured and coverage expired effective March 13, 2006.

compensation coverage of the policy. Pursuant to the terms of the policy, Continental Casualty conducted a preliminary audit and a final premium audit to determine the actual amount of exposure.[2] During the course of its audits, and in communications with AERAS, Continental Casualty discovered that AERAS had thirteen additional physicians who qualified as "persons engaged in work that could make [Continental Casualty] liable" under the workers' compensation insurance portion of the policy. Pursuant to the terms of the policy, Continental Casualty assessed the final premium for the policy, and AERAS has failed and/or refused to pay the balance due in violation of the policy terms. Instead, AERAS contends that the physicians are not "employees" and, therefore, AERAS maintains, the physicians' remuneration should not be included as a basis upon which the workers' compensation premium is calculated. Thus, the central issue in this litigation is whether the AERAS physicians as "employees" for purposes of workers' compensation insurance and, therefore, should be included in the assessment of the premium for the workers' compensation policy. It is with this central legal issue in mind that Continental Casualty issued the interrogatories and requests for production that are presently the subject of this Motion.

**B.      Continental Casualty Attempted in Good Faith to Resolve This Discovery Dispute Before Requesting the Assistance of This Court.**

Continental Casualty attempted to obtain certain discoverable information and documents from AERAS during the course of discovery. Despite written correspondence and attempted telephone conversations requesting complete and full responses, AERAS has failed to provide the

---

[2]The premium for the policy is based upon the amount of remuneration that is paid to any officer, employee, or <u>any person engaged in which that could make Continental Casualty liable under the workers' compensation portion of the policy</u>. [<u>See</u> Ex. A to Doc. 9, p. 4 of 5 (emphasis added)].

requested information and documents.  A brief summary of Continental Casualty's attempts to resolve this discovery dispute prior to the filing of this Motion is as follows:

1.      Continental Casualty served its First Interrogatories and First Requests for Production to AERAS on August 3, 2007.  AERAS's answers and responses to Continental Casualty's discovery requests were due on September 5, 2007.[3]  (Continental Casualty's First Interrogatories and First Requests for Production are attached hereto as "Exhibit A").

2.      On August 30, 2007, counsel for AERAS wrote to counsel for Continental Casualty and requested that a mutually-agreeable Protective Order be entered prior to disclosure of certain documents in response to the requests for production.  Continental Casualty agreed to the entry of a mutually-agreeable Protective Order.

3.      Having received no objection or response to the outstanding discovery, the undersigned wrote to counsel for AERAS on September 17, 2007 and requested the responses be provided by October 1, 2007.  (A copy of the undersigned's September 17, 2007 letter is attached at "Exhibit B").

4.      On September 21, 2007, counsel for AERAS forwarded a proposed Protective Order, to which Continental Casualty agreed on September 24, 2007.  A Joint Motion for Protective Order was filed on September 28, 2007.  [Doc. 18].

5.      This Honorable Court entered the Protective Order on October 11, 2007. [Doc. 19].

---

[3]This date includes the thirty-day period for responding that is provided in Federal Rules of Civil Procedure 33 and 34, as well as the three-day period for documents that are mailed as outlined in Federal Rule of Civil Procedure 6(e).

6.      On October 12, 2007, the undersigned again wrote to counsel for AERAS and requested that AERAS provide its discovery responses no later than October 26, 2007.  (A copy of the undersigned's October 12, 2007 email is attached at "Exhibit C").

7.      AERAS's responses to the requests for production were delivered to the undersigned's office on October 30, 2007.  However, AERAS failed to provide its responses to interrogatories.  (A copy of AERAS's Responses to the requests for production is attached as "Exhibit D").

8.      Accordingly, on October 30, 2007, the undersigned again wrote to counsel for AERAS and requested that the responses to interrogatories be emailed or faxed that same day.  (A copy of the undersigned's October 30, 2007 email is attached at "Exhibit E").

9.      On November 14, 2007, counsel for AERAS advised that the interrogatory answers would be forthcoming.  (A copy of attorney Mike Cohan's November 14, 2007 email is attached at "Exhibit F").  However, the responses to interrogatories were not served until November 26, 2007, almost four months from the date on which they were initially served.  (A copy of AERAS's Responses to the interrogatories is attached at "Exhibit G").

10.     Although AERAS had at no time asserted any objections to the interrogatories or requests for production, nor attempted to make any agreement to reserve its objections with respect to the discovery requests, the responses AERAS served were replete with objections.

11.     On November 30, 2007, the undersigned wrote to counsel for AERAS and requested that it reconsider certain of its objections and/or clarify certain of its responses.  The letter further requested that AERAS provide a privilege log in accordance with Federal Rule of Civil Procedure

26(b)(5)(A) for any document withheld on the basis of privilege or work-product. (A copy of the undersigned's November 30, 2007 letter is attached as "Exhibit H").

12.    Counsel requested a response no later than December 14, 2007.  When no response was received, Continental Casualty's counsel made additional attempts to speak with counsel for AERAS by telephone in an effort to resolve the discovery dispute.

13.    AERAS's counsel responded on December 27, 2007, in which AERAS clarified certain of its interrogatory responses and provided supplemental responses to certain others. However, in the response, AERAS continued to stand on its untimely objections with respect to sixteen (16) of the responses, which are now the remaining issues in this discovery dispute.  (A copy of AERAS's counsel's December 27, 2007 email communication is attached as "Exhibit I").

14.    Moreover, although Continental Casualty has requested a privilege log, AERAS has not provided one as required under Federal Rule of Civil Procedure 26(b)(5)(A).

Because Continental Casualty's efforts to resolve these discovery issues have been unsuccessful, Continental Casualty now seeks the assistance of this Court in compelling AERAS to provide the requested, discoverable information that is discussed more fully below.

**C.    The Objections Are Waived As They Were Not Timely Asserted and Contain Insufficient Bases Upon Which They Could Be Sustained.**

**(1)    AERAS's objections are waived.**

Pursuant to Federal Rules of Civil Procedure 33 and 34, as well as federal case law, all objections asserted in Defendant AERAS's Responses to Interrogatories and Responses to Requests for Production are waived.  Federal Rules of Civil Procedure 33 and 34 provide that the party upon whom interrogatories and requests for production are served must provide its answers or responses,

as well as assert any objections, within thirty days after service of the interrogatories and/or requests. "[W]hen a party fails to serve objections to interrogatories and/or document requests within the time required, in absence of good cause or of an extension of time to do so, they have generally waived the right to raise objections later." Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 187 F.R.D. 528, 529 (E.D. Pa. 1999)(citations omitted); see also Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 617 (5th Cir. 1977); IMA North America, Inc. v. Marlyn Nutraceuticals, Inc., 2007 WL 2391099 at *3 (D. Ariz. 2007).

It is undisputed that AERAS asserted no objections to the requests for production until it served its responses to the requests on October 30, 2007, nearly ninety days after service of the written discovery and approximately two months after the expiration of the response time provided in the Federal Rules of Civil Procedure. Similarly, AERAS did not assert any objections to the interrogatories until November 26, 2007, almost four months after the interrogatories were initially served. Because AERAS failed to timely assert objections to Continental Casualty's Interrogatories and Requests for Production, the objections are improperly asserted and should be deemed waived.

**(2)    AERAS states insufficient grounds generally for its objections.**

Even if this Court finds that AERAS's objections have not been waived by its failure to timely assert same, the objections are misplaced, inapplicable, and lack the specificity necessary to be sustained. AERAS responds to the overwhelming majority of the interrogatories and requests on the basis that they are vague, overly broad, and not calculated to lead to the discovery of admissible evidence. However,

> [a] party's mere statement that an interrogatory or other request for discovery is "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to discovery; the party resisting discovery must show

6

> specifically how each request for production is not relevant or how each question is overly broad, burdensome or oppressive.  If the responding party fails to timely object to disclosure or state the reason for the objection, [it] may be held to have waived any objections.

10 Fed. Proc., L.Ed. § 26:99 (2007) (citing St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp., 198 F.R.D. 508, 48 Fed. R. Serv. 3d 1232 (N.D. Iowa 2000); Rivera v. Kmart Corp., 190 F.R.D. 298, 45 Fed. R. Serv. 3d 1349 (D.P.R. 2000)); see also 23 Am. Jur. 2d Depositions and Discovery § 138 (2007).  Because AERAS's objections lack the required specificity, the objections should not be sustained and AERAS should be required to immediately provide the requested information and/or documents.

Moreover, with respect to its claim that the interrogatories and/or requests seek privileged information, AERAS has failed to establish that any of the requested information and/or documents fall within the attorney-client privilege.[4]

> To be privileged against disclosure, therefore, a communication between a lawyer and a person must meet several criteria; not every communication between a lawyer and another person is privileged.  Hunt v. State, 642 So. 2d 999, 1033 (Ala. Crim. App. 1993). . . . The burden of proving that a particular communication comes within the privilege rests on the party asserting the privilege, not on he who is seeking the information.  "Whether the party who asserts the attorney-client privilege is the attorney or the client, the party must establish (1) the presence of an attorney-client relationship, (2) the facts which demonstrate the communications were within the privilege, and (3) the prejudicial effect to the client which would result from any disclosure of the privileged information.  Swain v. Terry, 454 So. 2d 948 (Ala. 1984)."  Ex parte McDuffie, 624 So. 2d 1063, 1065 (Ala. 1993); see also Hunt v. State, 642 So. 2d 999 (Ala. Crim. App. 1993); Ex parte Clark, 639 So. 2d 493, 495 (Ala. Crim. App. 1993)("The burden of establishing the privilege rests with the client or with the party objecting to the disclosure of the communication.").

McClary v. Walsh, 202 F.R.D. 286, 290-91 (N.D. Ala. 2000).

---

[4]Because this Court is sitting in diversity, the applicable law regarding privileges also comes from state law.  See Fed. R. Evid. 501.

7

AERAS's barren objection that the interrogatories and/or requests "seek privileged information" is wholly inadequate to establish the attorney-client privilege. AERAS has not only failed to present the information necessary to establish the privilege under Alabama law, but it has failed to assert its objections under the requirements identified in Federal Rule of Civil Procedure 26(b)(5). "Many courts interpreting [Federal Rules of Civil Procedure 26 and 34] have found a blanket claim of privilege to be insufficient and that a log or index of materials withheld under claim of privilege must be produced." Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc., 230 F.R.D. 688, 695 (M.D. Fla. 2005)(citing Harper v. Auto-Owners Ins. Co., 138 F.R.D. 688, 664 (S.D. Ind. 1991) and Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 641-42 (S.D. N.Y. 1991)). AERAS has failed to provide a privilege log or any other communication describing the documents or things not produced. Therefore, AERAS has failed to meet its burden of establishing application of the attorney-client privilege, and any document or information withheld from production on the basis of privilege should be immediately provided.

Finally, even had AERAS not waived its objections, Continental Casualty's Interrogatories and Requests for Production seek information that is discoverable and not subject to any privilege. As this Court has previously held:

> Under the Federal Rules of Civil Procedure, parties may discover information which is relevant and non-privileged. . . . Under the federal rules, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389-90, 57 L.Ed.2d 253 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. Id.; Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Where there is a doubt over relevancy, the court should still permit discovery. Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556 (7th Cir. 1984).

8

Coker v. Duke & Co., Inc., 177 F.R.D. 682, 685 (M.D. Ala. 1998).

**D.     Specific Requests Upon Which Continental Casualty Seeks This Court to Compel Defendant AERAS to Respond.**

Because the information requested in the outstanding discovery is relevant information, to which no applicable privilege or immunity applies, Continental Casualty respectfully requests that this Honorable Court compel Defendant AERAS to produce full and complete responses to the Interrogatories and Requests for Productions discussed below.  For ease of reference, Continental Casualty will outline the specific interrogatories and document requests on which it seeks full and complete responses.

**Continental Casualty's Interrogatory 15**
If AERAS claims that another company provided alternative coverage for its employees and/or subcontractors during the policy period of May 3, 2005 to May 3, 2006, please state the name and business address of the company providing alternative coverage, the policy number under which alternative coverage was provided, and identify the individual at said company with whom you had contact regarding the alternative coverage.

In response, AERAS objects that the interrogatory is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information, and AERAS refuses to provide the information requested.  However, as noted above, AERAS has failed to timely or properly assert any objection to this interrogatory.  The interrogatory is neither vague nor over broad.  It seeks specific information during an identifiable period of time.  Moreover, it does not seek "privileged information," and, even if it did, AERAS has not carried its burden of proving that the information is "privileged" and not subject to discovery.  Finally, the interrogatory seeks information regarding any other workers' compensation policy that may have provided coverage for AERAS's employees and/or subcontractors, which is entirely relevant to the central issue in this litigation.  Because the

9

interrogatory seeks relevant information to which no timely or proper objection was asserted, Continental Casualty respectfully requests that this Honorable Court compel AERAS to provide a full and complete response to the interrogatory.

**Continental Casualty's Interrogatory 17**
Please state whether AERAS has ever been a party to another other lawsuit, bankruptcy, claim for nonpayment of workers' compensation insurance premiums, dispute over premiums due on workers' compensation insurance, or dispute over calculation of workers' compensation insurance premiums.

As with the previous interrogatory, AERAS objects to this interrogatory and contends that it is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. However, AERAS failed to assert any timely objection to this interrogatory and, even once the objections were stated, they are inapplicable and improperly stated. This interrogatory seeks information regarding prior lawsuits to which AERAS may have been a party, including those actions for recovery of workers' compensation premiums such is at issue here. The interrogatory seeks relevant information to which no applicable objection was timely or properly stated. Therefore, Continental Casualty respectfully requests that AERAS be compelled to provide a full and complete response to the interrogatory.

**Continental Casualty's Interrogatory 23**
Please describe fully and in detail the training that AERAS provides to each of its workers, employees, subcontractors and independent contractors.

AERAS provides no response to this interrogatory. Rather, it objects to the interrogatory and contends that it is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. AERAS's objections, however, are untimely, misplaced, and insufficient to establish that the requested information is privileged. Therefore, the interrogatory is due to be answered. Moreover, the requested information is relevant to the central issue in this litigation

10

regarding whether the physicians who were omitted from the payroll amounts submitted by AERAS at the policy's inception are actually employees for the purposes of bringing them within the risk insured by the workers' compensation policy issued by Continental Casualty. Critical to analysis of this issue is the right of control that AERAS had over the physicians. See Martin v. Lawrence County, 628 So. 2d 652, 654 (Ala. Civ. App. 1993); see also Turnipseed v. McCafferty, 521 So. 2d 31, 32-33 (Ala. Civ. App. 1987). Whether training was provided to the physicians is one aspect in which the right of control might be established. Therefore, the sought information is relevant information to which no timely or proper objection was asserted. Accordingly, AERAS should be required to provide a full and complete response to the interrogatory.

**Continental Casualty's Interrogatory 29**
What expenses are incurred by AERAS's workers, employees, subcontractors, and/or independent contractors in the performances of services for AERAS?

**Continental Casualty's Interrogatory 30**
Please identify and fully describe all expenses for which AERAS reimburses its workers, employees, subcontractors, and/or independent contractors.

AERAS provided no response to either of these interrogatories. Instead, it attempts to assert objections on the basis that these interrogatories are vague, overly broad, seek privileged information, and not calculated to lead to discoverable information. However, as noted previously, AERAS failed to timely assert its objection to these, or any other, interrogatories. Moreover, AERAS's objections are insufficient to establish that the interrogatories are vague, overly broad, or seek privileged information. Finally, the interrogatories seek information relevant to the central issue in this case, which is whether AERAS retained control over the physicians. Because the interrogatories seek relevant information to which no proper or timely objection has been asserted, AERAS should be compelled to provide full and complete responses to Interrogatories 29 and 30.

11

**Continental Casualty's Interrogatory 33**
Please identify and specifically describe all pension, bonuses, vacation, and/or sick pay available to AERAS's workers, employees, subcontractors, and independent contractors.

AERAS does not respond to this interrogatory, and objects on the basis that the interrogatory is unduly burdensome, vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information.  However, AERAS failed to timely assert any properly-stated objection to this interrogatory.  Moreover, the interrogatory seeks information relevant to the central issue in this action as the method by which an individual receives payment for his services is a key factor in determining whether an employer-employee relationship for the purposes of workers' compensation.  See Martin v. Lawrence County, 628 So. 2d 652, 654 (Ala. Civ. App. 1993).

**Continental Casualty's Interrogatory 34**
Does AERAS deduct social security tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors?

**Continental Casualty's Interrogatory 35**
Does AERAS deduct federal income tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors?

**Continental Casualty's Interrogatory 36**
How does AERAS report the income of its workers, employees, subcontractors, and independent contractors to the Internal Revenue Service?

AERAS again asserted objections to these interrogatories on the basis that they are unduly burdensome, vague, overly broad, seek privileged information, and not calculated to lead to discoverable information.  AERAS's objections, however, are untimely and inapplicable, as set forth above.  Nevertheless, to each of the foregoing interrogatories, AERAS provided the following response: "AERAS complies with all local, state and federal tax laws."  This response is not responsive to the interrogatories posed.  The questions seek information regarding whether social

security tax and federal income tax are deducted from payments made to AERAS's workers, employees, subcontractors, and/or independent contractors and the method by which AERAS reports the income of these individuals. The interrogatories are not intended to provide, nor are they written to request, AERAS's opinion on whether it has properly applied the local, state, and federal tax laws. The manner in which an individual receives remuneration for his services, including whether taxes are deducted out of monies paid to him, are factors that a court can consider in determining whether an employer-employee relationship existed for the purposes of workers' compensation insurance. See Lacey v. American Shell Co., Inc., 628 So. 2d 684, 686 (Ala. Civ. App. 1993). Thus, these interrogatories seek relevant information to which no timely or proper objection applies. Accordingly, Continental Casualty respectfully requests that AERAS be compelled to provide full and complete responses to Interrogatories 34, 35, and 36.

**Continental Casualty's Request for Production 17**
AERAS's payroll ledger, books, or records kept in the usual course of AERAS's business pertaining to workers, employees, subcontractors, and/or independent contractors of AERAS for the policy period of May 3, 2005 through May 3, 2006.

**Continental Casualty's Request for Production 19**
AERAS's disbursement journals, books, or records kept in the usual course of its business for the policy period of May 3, 2005 through May 3, 2006.

**Continental Casualty's Request for Production 20**
AERAS's general ledger, books, or records kept in the usual course of its business for the policy period of May 3, 2005 through May 3, 2006.

AERAS failed to provide any documents in response to these requests. Rather, AERAS objects to the requests and contends that they are vague, overly broad, overly burdensome, and not reasonably calculated to lead to discoverable information. AERAS's objections, however, were untimely asserted and are insufficient to establish that the requests are vague, overly broad, or overly

burdensome. AERAS further objects to the requests on the basis that they seek information that is protected as trade secret and/or proprietary information and information that is personal and private information involving physicians and employees who are not parties to the action. However, this Court entered a Protective Order on October 11, 2007 that prohibits disclosure of any information or documents that are designated as "Confidential" by AERAS. Thus, there are provisions in place to insure that the privacy of any physician and/or employee is protected. Finally, AERAS contends that these requests are not related to the pending litigation and are meant only to "harass, oppress, and annoy" AERAS. Despite AERAS's blanket assertions, the requested information is precisely the type of information that AERAS was required to make available, and did make available, for review by Continental Casualty's auditor, Tom Dyer.[5]  (See Deposition testimony of Tom Dyer, attached as "Exhibit J," pp. 22, 24-25, 29). This information, along with other information provided by the insured during the audit process, was used to determine the final premium that serves as the basis of this litigation. Therefore, the requested information and documentation is entirely relevant to the prosecution of this action. As the requests seek relevant information to which no timely or proper objection applies, AERAS should be compelled to provide the requested information and documents.

**Continental Casualty's Request for Production 24**
Any and all federal and state income tax filings for AERAS for the years 2000 to the present.

AERAS objects to this request as vague, overly broad, overly burdensome, and not reasonably calculated to lead to discoverable information. However, as addressed above, these

---

[5]The information was made available for inspection and review by Continental Casualty's auditor at AERAS's office. AERAS was not required to provide, nor did it provide, photocopies of the information at that time.

objections are untimely and provide insufficient information upon which the objections can be sustained. Subject to its objections, AERAS produced its 941 Employer's Quarterly Tax Returns for the last 3 quarters of 2005 and the first 2 quarters of 2006. However, this is an incomplete response to the request. The requested information is relevant because it may reveal AERAS's past and present treatment of the physicians as employees and may reveal facts that support the conclusion that these physicians were, in fact, employees for the purposes of workers' compensation insurance. As such, the request seeks relevant information to which no timely or properly-stated objection applies. Therefore, AERAS should be compelled to produce the requested documents.

**Continental Casualty's Request for Production 29**
Any and all personnel files for any physician that performed work or services on behalf of AERAS pursuant to its agreements with any Baptist hospital during the period of May 3, 2005 to May 3, 2006.

**Continental Casualty's Request for Production 30**
Any and all applications completed by any physician that performed work or services on behalf of AERAS pursuant to its agreements with any Baptist hospital during the period of May 3, 2005 to May 3, 2006.

AERAS objects to these requests and contends that they are vague, overly broad, overly burdensome, and not reasonably calculated to lead to discoverable information. AERAS further objects that the requests seek information that is protected as trade secret and/or proprietary information and that is personal and private information involving physicians and/or employees who are not parties to this action. Finally, AERAS objects to producing the requested information on the basis that it is not related to the pending litigation and is meant only to harass, oppress, and annoy AERAS.

AERAS's objections were not timely asserted and, therefore, are waived. Nevertheless, the objections are inapplicable and improperly asserted. AERAS fails to provide any information upon

which this Court could sustain its objections on the basis of vague, overly broad, and overly burdensome. Moreover, this Court has taken specific steps to protect the confidentiality of sensitive information that might be produced in this action through the entry of a Protective Order. Therefore, AERAS's objection to producing the information on the basis of privacy is without merit. Finally, the request seeks relevant information as the applications and personnel files of the physicians likely contain information regarding the manner in which these physicians were paid (including authorizations for certain deductions and benefits) and information regarding the employer-employee relationship between AERAS and the physicians. Because these requests seek relevant information to which no timely or proper objection was asserted, Continental Casualty respectfully requests that this Court enter an Order compelling AERAS to produce the requested information and documents.

### Continental Casualty's Request for Production 32
Copies of each and every invoice issued to any Baptist hospital for emergency room physician services during the period of May 3, 2005 to May 3, 2006.

AERAS objects to this request as vague, overly broad, overly burdensome, and not reasonably calculated to lead to discoverable information. AERAS also contends that the requested information that is protected as trade secret and/or proprietary information, not related to the current litigation, and is meant only to harass, oppress, and annoy AERAS. Nevertheless, AERAS failed to timely assert any objection to this, or any other interrogatory or request. Thus, AERAS's objections should be deemed waived. Moreover, AERAS has failed to properly assert its objections in that it has provided no information upon which this Court could sustain AERAS's objections that the request is vague, overly broad, or overly burdensome. With respect to AERAS's concerns regarding protection of the information that it asserts is "trade secret and/or proprietary," AERAS requested, and Continental Casualty agreed, to the entry of a Protective Order to protect any

16

"Confidential" information or documents from dissemination to third parties. Thus, adequate protections are in place to insure that AERAS's alleged "trade secret and/or proprietary" information remains so. Finally, AERAS's blanket assertions that the request is meant only to harass, oppress, and annoy are wholly without merit. Rather, the request seeks relevant information. Pursuant to other documents that AERAS has produced, it appears that the physicians in question were paid based upon the services they provided at various Baptist Health System Hospitals in the Montgomery and Prattville area. (See e.g., Exhibit J, pp. 34). Because assessment of the final premium in this case is premised upon the remuneration that the physician/employees received, production of the requested information may provide further support for final premium as assessed by Continental Casualty. As the request seeks relevant information to which no timely or applicable objection has been asserted, AERAS should be compelled to produce the requested documentation.

**E.    Conclusion.**

As this Court is aware, the Federal Rules of Civil Procedure permit liberal discovery. In fact, Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The information and documents requested by Continental Casualty in the instant action are necessary to assist Continental Casualty in the investigation and prosecution of its claims. Each interrogatory and/or document request at issue in this matter is reasonably calculated to secure relevant information regarding the claims and damages asserted in this lawsuit. Moreover, no timely

and/or proper objection was asserted to the requests. Therefore, Continental Casualty respectfully requests that this Honorable Court enter an order granting this Motion and compelling AERAS to provide the requested information and/or documents.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Continental Casualty Company respectfully requests that this Honorable Court grant this Motion and compel Defendant AERAS to provide full, sworn responses within seven (7) days of the entry of any such order.

Respectfully submitted,

/s/ Candace L. Hudson
Brenen G. Ely (0366-E54B)
Joel S. Isenberg (8855-N76J)
Candace L. Hudson (8314-N66H)
Attorneys for Plaintiff Continental Casualty Company

**OF COUNSEL:**
ELY & ISENBERG, L.L.C.
600 Beacon Parkway West, Suite 104
Birmingham, Alabama 35209
Telephone:     (205) 313-1200
Facsimile:     (205) 313-1201

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been on all parties of record by:

| | |
|---|---|
| _____ | Hand Delivery |
| _____ | U.S. Mail |
| _____ | Overnight Delivery |
| _____ | Facsimile |
| X | E-File |

on this the 2nd day of January, 2008.

/s/ Candace L. Hudson
OF COUNSEL

18

cc:    Michael Cohan
       HILL, HILL, CARTER, FRANCO,
         COLE & BLACK, P.C.
       Post Office Box 116
       Montgomery, AL 36101

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: |
| vs. | § | |
| | § | 2:07-CV-221-WHA |
| | § | |
| ALABAMA EMERGENCY ROOM | § | |
| ADMINISTRATIVE SERVICES, P.C., | § | |
| | § | |
| Defendant. | § | |

## FIRST INTERROGATORIES TO DEFENDANT

COMES NOW Plaintiff Continental Casualty Company ("Continental Casualty") and, pursuant to Federal Rule of Civil Procedure 33, requests that Defendant Alabama Emergency Room Administrative Services, P.C. ("AERAS"), within the thirty (30) days after service of these interrogatories, respond fully in writing under oath to each of the following:

## DEFINITIONS

As used in these interrogatories, the following definitions apply:

1.      As used herein, the terms "you" and "your" refer to Defendant Alabama Emergency Room Administrative Services, P.C. and its agents, or any person acting or purporting to act on its behalf, now or in the past, including but not limited to, its attorneys and any expert employed on its behalf for the purpose of this litigation.

2.      As used herein, the term "person" includes natural persons, governments (or agencies thereof), quasi-public entities, corporations, partnerships, ventures, and all other forms of organizations and associations of business entities.

3.    As used herein, the phrase "policy made basis of this lawsuit" refers to the workers' compensation insurance policy issued by Continental Casualty Company to Alabama Emergency Room Administrative Services, P.C., policy number 6BS59UB-7603B64-6-05, for the policy period of May 3, 2005 to May 3, 2006.

4.    "Communication" and "statement" refer to any and all communications, either written or oral, regardless of the medium or context of the communication.

5.    "Document" shall include, but is not limited to, any and all written, audio or visual material, however produced, that is in some way tangible.

6.    As used herein, the term "expert" refers to anyone that AERAS has employed, are planning to employ, or may potentially employ as a witness or to assist in the preparation of this litigation or the trial of this case, including but not limited to, engineers, scientists, physicians, technical experts, or anyone that may be used as a witness who will not testify as an eyewitness in some capacity.

7.    As used herein, the term "identify," when referring to a natural person, means to provide an identification sufficient to notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation and address, and title or occupation.

8.    As used herein, the term "identify," when referring to a document or writing, means to give sufficient characterization of such document or writing so as to have identified it "with reasonable particularity" for purposes of Rules 33 and 34 of the Federal Rules of Civil Procedure. More particularly, the term "identify" when used with reference to a document includes:

2

a.   the date the document bears, or if none, the date it was written;

b.   the name and address of each person who wrote it or participated in the writing of it;

c.   the name and address of each person to whom it was addressed and each person to whom a copy was identified as being directed;

d.   the name and address of each person who received a copy of the document;

e.   a description of the document, as for instance, a letter or memorandum;

f.   its present location or custodian of each copy or, if unknown, its last known location or custodian;

g.   if any document is no longer in Plaintiffs' possession or subject to Plaintiffs' control, state what disposition was made of it, the reason for such disposition, the identity of the person currently having possession or control, and the date the possession or control was relinquished by Plaintiffs.

9.    As used herein, the term "identify" when used with reference to an oral communication, means to provide the following information:

a.   the persons participating in the oral communication;

b.   the date, manner (e.g., telephone) and place at which persons participating in or hearing the oral communication were located;

c.   a description of the circumstances surrounding the communications, as, for instance, meeting, speech or conversation;

d.   the name of each person who was present, in addition to the participants; and

e.   the substance of the oral communication.

10.   As used herein, the term "worker" refers to AERAS's workers, employees, subcontractors and/or independent contractors.

3

## **INTERROGATORIES**

1.     For each requested Admission that you denied, please provide a detailed explanation of the reason for each such denial and state what you assert to be the facts relevant to each request.

**ANSWER:**


2.     Please state the full name, home and work addresses, and job title of the person or persons answering these interrogatories.

**ANSWER:**


3.     Please state the names and addresses of all persons who have knowledge of any fact relating to the incidents made the basis of this lawsuit.

**ANSWER:**


4.     As to each person named above, please describe in detail his/her knowledge of the facts regarding the claim made the basis of this lawsuit.

**ANSWER:**


5.     Please identify and describe in detail each and every communication that AERAS or any of its representatives have had with Continental Casualty or any of its employees, agents, or representatives regarding the incident made the basis of this lawsuit, specifically identifying the person(s) between whom each communication was made, the manner of communication, and the substance of each communication.

4

**ANSWER:**

6.    Please identify and describe in detail each and every communication that AERAS or any of its employees, agents, or representatives have had with its insurance agent or any other person not a party to this lawsuit regarding the incidents made the basis of this lawsuit, specifically identifying the person(s) with whom AERAS or its employees, agents, or representatives communicated and the substance of each such communication.

**ANSWER:**

7.    If AERAS claims that the workers' compensation insurance failed to conform to that which AERAS requested, please identify and describe in detail how such insurance failed to conform and state the method by which these alleged failures were communicated to Continental Casualty.

**ANSWER:**

8.    If AERAS claims any defect or problem in any of the insurance services provided, please state the nature of each alleged defect or problem, the date on which each defect or problem was first observed by AERAS, and identify the person who first observed the alleged defect or problem.

**ANSWER:**

9.    If AERAS claims any defect or problem with the workers' compensation insurance upon which this lawsuit is based, please state whether AERAS notified Continental Casualty of such

a problem, and, if so, please identify the date on which AERAS notified Continental Casualty of such problem, the manner in which AERAS notified Continental Casualty, the person at AERAS who communicated the notification to Continental Casualty, the substance or content of the notification, and to whom the notification was given.

**ANSWER:**


10.    Please identify each and every payment made by AERAS for the initial or final premium amount for the workers' compensation coverage that is the basis of this lawsuit. Your response should include the date and manner of each payment, and the recipient for same.

**ANSWER:**


11.    If AERAS has not paid, in full, the final premium amount that is the subject matter of this litigation, please state your reason for not paying the full amount of the final premium that has been invoiced to AERAS.

**ANSWER:**


12.    Please state the name and address of the person who is the custodian of books and records of AERAS.

**ANSWER:**


13.    Please state the name and address of the person who maintains the payroll records of AERAS.

6

**ANSWER:**

14.     Please state the name, job description, and monthly payroll amounts for each workers, employee, subcontractor and independent contractor for AERAS during the policy period of May 3, 2005 to May 3, 2006.

**ANSWER:**

15.     If AERAS claims that another company provided alternative coverage for its employees and/or subcontractors during the policy period of May 3, 2005 to May 3, 2006, please state the name and business address of the company providing alternative coverage, the policy number under which alternative coverage was provided, and identify the individual at said company with whom you had contact regarding the alternative coverage.

**ANSWER:**

16.     Please state the name and address of the insurance agent through whom AERAS placed its workers' compensation coverage with Continental Casualty.

**ANSWER:**

17.     Please state whether AERAS has ever been a party to another other lawsuit, bankruptcy, claim for nonpayment of workers' compensation insurance premiums, dispute over premiums due on workers' compensation insurance, or dispute over calculation of workers' compensation insurance premiums.

7

**ANSWER:**

18.    Please state the amount that AERAS contends that it owes or owed under the workers' compensation policy issued to AERAs by Continental Casualty for the May 3, 2005 to May 3, 2006 policy period.

**ANSWER:**

19.    Please identify and describe in detail how AERAS determined or calculated the amount that it identified in the previous interrogatory response.

**ANSWER:**

20.    Please state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own workers' compensation policy.

**ANSWER:**

21.    Please state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own liability policy.

**ANSWER:**

22.    Please state whether the work performed by each worker, employee, subcontractor, and independent contractor of AERAS is performed pursuant to a written agreement.

**ANSWER:**

8

23.    Please describe fully and in detail the training that AERAS provides to each of its workers, employees, subcontractors and independent contractors.

**ANSWER:**


24.    Is each AERAS worker, employee, subcontractor, and independent contractor given instructions in the way that work is to be performed?

**ANSWER:**


25.    Does AERAS have the right to change the methods used by its workers, employees, subcontractors, and independent contractors or to direct those persons on how to perform their work?

**ANSWER:**


26.    Is each AERAS worker, employee, subcontractor, and independent contractor required to follow a routine or a schedule established by AERAS?  If so, please identify and fully describe the routine or schedule that must be followed by each.

**ANSWER:**


27.    Does each AERAS worker, employee, subcontractor, and independent contractor furnish a time record to AERAS?

**ANSWER:**

28.    Who is responsible for providing all tools, equipment, supplies, and materials necessary for completion of work to the AERAS workers, employees, subcontractors, and independent contractors?

**ANSWER:**


29.    What expenses are incurred by AERAS's workers, employees, subcontractors, and/or independent contractors in the performances of services for AERAS?

**ANSWER:**


30.    Please identify and fully describe all expenses for which AERAS reimburses its workers, employees, subcontractors, and/or independent contractors.

**ANSWER:**


31.    Please identify and fully describe the type of pay that each worker, employee, subcontractor, and independent contractor receives.

**ANSWER:**


32.    Does AERAS guarantee a minimum amount of pay to its workers, employees, subcontractors, and independent contractors?

**ANSWER:**


10

33.    Please identify and specifically describe all pension, bonuses, vacation, and/or sick pay available to AERAS's workers, employees, subcontractors, and independent contractors.

**ANSWER:**


34.    Does AERAS deduct social security tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors?

**ANSWER:**


35.    Does AERAS deduct federal income tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors?

**ANSWER:**


36.    How does AERAS report the income of its workers, employees, subcontractors, and independent contractors to the Internal Revenue Service?

**ANSWER:**


37.    Please identify by name and address all workers, employees, subcontractors, and/or independent contractors to whom AERAS provided medical malpractice or professional liability coverage during the policy period of May 3, 2005 to May 3, 2006.

**ANSWER:**


11

38.   For each individual identified in AERAS's response to the preceding interrogatory, please state how said individual was classified for purposes of medical malpractice or professional liability coverage.

**ANSWER:**


These interrogatories shall be deemed as continuing in nature so as to require supplemental answers if the respondent obtains information, of the nature and character requested in the interrogatories, between the time that the answers are served and the date of trial.


Brenen G. Ely (0366-E54B)
Joel S. Isenberg (8855-N76J)
Candace L. Hudson (8314-N66H)
Attorneys for Plaintiff Continental Casualty Company

**OF COUNSEL:**
ELY & ISENBERG, L.L.C.
600 Beacon Parkway West, Suite 104
Birmingham, Alabama 35209
Telephone:   (205) 313-1200
Facsimile:   (205) 313-1201

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been on all parties of record by:

|       |                    |
|-------|--------------------|
| _____ | Hand Delivery      |
| __X__ | U.S. Mail          |
| _____ | Overnight Delivery |
| _____ | Facsimile          |
| _____ | E-File             |

on this the 3rd day of August, 2007.

12

OF COUNSEL

cc:    Michael Cohan
       HILL, HILL, CARTER, FRANCO,
          COLE & BLACK, P.C.
       Post Office Box 116
       Montgomery, AL 36101

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: |
| vs. | § | |
| | § | 2:07-CV-221-WHA |
| | § | |
| ALABAMA EMERGENCY ROOM | § | |
| ADMINISTRATIVE SERVICES, P.C., | § | |
| | § | |
| Defendant. | § | |

## FIRST REQUESTS FOR PRODUCTION TO DEFENDANT

COMES NOW Plaintiff Continental Casualty Company ("Continental Casualty") and, pursuant to Federal Rule of Civil Procedure 34, requests that Defendant Alabama Emergency Room Administrative Services, P.C. ("AERAS"), within the thirty (30) days after service of these requests, produce for inspection and copying at the offices of ELY & ISENBERG, LLC, the information, documents, or things described below:

## DEFINITIONS

As used in these requests for production, the following definitions apply:

1.      As used herein, the term "document" means, without limitation, the following items, whether printed, recorded or reproduced by any other mechanical means or process, or written or produced by hand: agreements; contracts; communications; correspondence; letters; telegrams; tape recordings; memoranda; notes; summaries or other recordings of telephone conversations, personal conversations, or meetings; agenda of meetings; notices; records; bids records; personal memoranda; photographs; photographic slides; motion picture films, charts; graphs, diagrams; reports; statement of witnesses; findings of investigations; files; reports of experts, reports of consultants; papers;

books; records; summaries; electronic mail; any of the above maintained or transmitted electronically or by computer; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

2.    As used herein, the term "oral communications" means any words heard or spoken, including, without limitation, words spoken at any meeting, discussion, speech or conversation, including any telephone conversation.

3.    As used herein, the term "person" includes natural persons, governments (or agencies thereof), quasi-public entities, corporations, partnerships, ventures, and all other forms of organizations and associations of business entities.

4.    As used herein, the terms "you" and "your" refer to Defendant Alabama Emergency Room Administrative Services, P.C. and its agents, or any person acting or purporting to act on its behalf, now or in the past, including but not limited to, its attorneys and any expert employed on its behalf for the purpose of this litigation.

5.    As used herein, the term "identify," when referring to a natural person, means to provide an identification sufficient to notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation and address, and title or occupation.

6.    As used herein, the term "identify," when referring to a document or writing, means to give sufficient characterization of such document or writing so as to have identified it "with reasonable particularity" for purposes of Rules 33 and 34 of the Federal Rules of Civil Procedure. More particularly, the term "identify," when used with reference to a document includes:

     a.     date the document bears, or if none, the date it was written;

     b.     name and address of each person who wrote it or participated in the writing of it;

     c.     name and address of each person to whom it was addressed and each person to whom a copy was identified as being directed;

     d.     name and address of each person who received a copy of the document;

     e.     description of the document, as for instance, a letter or memorandum;

     f.     its present location or custodian of each copy or, if unknown, its last known location or custodian;

     g.     if any document is no longer in the plaintiff's possession or subject to AERAS's control, state what disposition was made of it, the reason for such disposition, the identity of the person currently having possession or control, and the date the possession or control was relinquished by AERAS.

7.     As used herein, the term "identify," when used with reference to an oral communication, means to provide the following information:

     a.     persons participating in the oral communication;

     b.     date, manner (e.g., telephone) and place at which persons participating in or hearing the oral communication were located;

     c.     a description of the circumstances surrounding the communications, as, for instance, meeting, speech or conversation;

     d.     name of each person who was present, in addition to the participants; and

     e.     substance of the oral communication.

8.     As used herein, the term "date" shall mean the exact day, month and year, if ascertainable, or if not, the best approximate thereof, including relationship to other events.

3

9.     As used herein, the term "he" or "she"is intended to refer to persons of both sexes regardless of which term is used.

10.     As used herein, the phrase "incidents made basis of this lawsuit" refers to those claims set forth by Continental Casualty in its Petition for Declaratory Judgment.

11.     As used herein, the term "communication" refers to any and all communications, either written or oral, regardless of the medium or context of the communication.

12.     As used herein, the term "expert" refers to anyone that AERAS has employed, is planning to employ, or may potentially employ as a witness or to assist in the preparation of this litigation or the trial of this claim, including but not limited to, engineers, scientists, physicians, technical experts, or anyone that may be used as a witness who will not testify as an eyewitness in some capacity.

13.     As used herein, the term "worker" refers to AERAS's workers, employees, subcontractors and/or independent contractors.

## REQUESTS FOR PRODUCTION

Please produce for inspection and copying at the offices of ELY& ISENBERG, LLC, 600 Beacon Parkway West, Suite 104, Birmingham, Alabama, 35209, within the time required under Rule 34 of the Federal Rules of Civil Procedure, the following documents and permit Continental Casualty or its attorneys to inspect and copy the same:

1.     All invoices that AERAS received from Continental Casualty with regard to the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**

4

2.      All statements that AERAS received from Continental Casualty regarding the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**


3.      All canceled checks that AERAS maintains evidence payment made to Continental Casualty with respect to the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**


4.      All contracts, agreements and memoranda of agreements between the parties regarding the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**


5.      All correspondence received by AERAS from Continental Casualty regarding the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**


6.      All correspondence sent by AERAS to Continental Casualty regarding the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**


5

7.    AERAS's entire file concerning the workers' compensation insurance coverage that forms the basis of this lawsuit, including the issues regarding calculation and payment of premium for the workers' compensation insurance coverage.

**RESPONSE:**


8.    AERAS's account-payable ledger, or record kept in the usual course of AERAS's business pertaining to the account of AERAS with Continental Casualty.

**RESPONSE:**


9.    All documents or other evidence that AERAS claims supports its position as to what the agreed premium was for the workers' compensation insurance coverage that forms the basis of this lawsuit.

**RESPONSE:**


10.    Any written objections sent by AERAS to Continental Casualty regarding the workers' compensation policy made the basis of this lawsuit.

**RESPONSE:**


11.    All documents referenced in or used to answer the interrogatories propounded by Continental Casualty to AERAS in this litigation.

**RESPONSE:**


6

12.    All documents that evidence why AERAS failed to pay the balance due on the final premium identified and described in Continental Casualty's Petition for Declaratory Judgment.

**RESPONSE:**


13.    All documents evidencing that AERAS has paid in full the balance due on the final premium that is identified and described in Continental Casualty's Petition for Declaratory Judgment.

**RESPONSE:**


14.    All W-2 forms for workers of AERAS's business for the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**


15.    All 1099 forms for any worker, employee, subcontractor, and/or independent contractor issued by AERAS for work or services performed during the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**


16.    All 941 forms for AERAS's business for work or services performed during the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**


7

17.    AERAS's payroll ledger, books, or records kept in the usual course of AERAS's business pertaining to workers, employees, subcontractors, and/or independent contractors of AERAS for the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**

18.    All documents that provide a description of the work to be performed by each worker, employee, subcontractor, and independent contractor of AERAS's business for the policy period of May 3, 2005 though May 3, 2006.

**RESPONSE:**

19.    AERAS's disbursement journals, books, or records kept in the usual course of its business for the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**

20.    AERAS's general ledger, books, or records kept in the usual course of its business for the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**

21.    All workers' compensation insurance certificates for all workers, employees, subcontractors, and/or independent contractors paid by AERAS during the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**

8

22.    All officer exemption forms maintained by AERAS for the workers' compensation insurance provided Continental Casualty for the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**

23.    All documents evidencing overtime breakdowns for each worker, employee, subcontractor, and independent contractor for the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**

24.    Any and all federal and state income tax filings for AERAS for the years 2000 to the present.

**RESPONSE:**

25.    If AERAS claims to be a partnership, proprietorship, or any other legal entity other than a corporation or limited liability company, please produce copies of all documentation evidencing the names of all individuals who held an ownership interest in AERAS from the time of the events referenced to in the Petition for Declaratory Judgment to the present and the dates of any change of ownership interest.

**RESPONSE:**

26.    If AERAS claims to be a corporation or limited liability company, please produce copies of any and all documentation evidencing the existence of such corporation or limited liability company.

9

**RESPONSE:**


27.    If AERAS claims that another company provided alternative coverage for AERAS's employees and/or subcontractors during the May 3, 2005 to May 3, 2006 policy period, please provide a copy of all policies, including the declaration pages for each such policy.

**RESPONSE:**


28.    Each and every contract for services that was in full force and effect between AERAS and any hospital for the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**


28.    Each and every contract that was in full force and effect between AERAS and any worker, employee, subcontractor, and/or independent contractor for work or services performed during the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**


29.    Any and all personnel files for any physician that performed work or services on behalf of AERAS pursuant to its agreements with any Baptist hospital during the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**

30.    Any and all applications completed by any physician that performed work or services on behalf of AERAS pursuant to its agreements with any Baptist hospital during the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**


31.    Any and all time records, time cards, time sheets, or other documents reflecting the time spent by any physician that performed work or services on behalf of AERAS pursuant to its agreements with any Baptist hospital during the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**


32.    Copies of each and every invoice issued to any Baptist hospital for emergency room physician services during the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**


33.    Copies of any and all emergency room physician schedules or established routines for work or services performed by any emergency room physician on behalf of AERAS pursuant to its agreements with any Baptist hospital during the period of May 3, 2005 to May 3, 2006.

**RESPONSE:**


34.    Any and all documents reflecting the obligations of any emergency room physician with respect to the insurance coverage(s) he/she must procure while performing work for or on behalf of AERAS.

11

**RESPONSE:**


35.     Any and all instruction, training, procedure, or continuing education materials, information, documents, or manuals that AERAS provided at any time to any employee, worker, subcontractor, or independent contractor who performed work or services for AERAS between May 3, 2005 to May 3, 2006.

**RESPONSE:**


36.     All certificates of insurance confirming the existence of medical malpractice or professional liability coverage for any worker, employee, subcontractor, and/or independent contractor paid by AERAS during the policy period of May 3, 2005 through May 3, 2006.

**RESPONSE:**



These requests shall be deemed as continuing in nature so as to require supplemental responses if the respondent obtains information, of the nature and character requested in the interrogatories, between the time that the answers are served and the date of trial.

12

*Candace Hudson*

Brenen G. Ely (0366-E54B)
Joel S. Isenberg (8855-N76J)
Candace L. Hudson (8314-N66H)
Attorneys for Plaintiff Continental Casualty
Company

**OF COUNSEL:**
ELY & ISENBERG, L.L.C.
600 Beacon Parkway West, Suite 104
Birmingham, Alabama 35209
Telephone:     (205) 313-1200
Facsimile:     (205) 313-1201

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been on all parties of record by:

| | |
|---|---|
| _____ | Hand Delivery |
| __X__ | U.S. Mail |
| _____ | Overnight Delivery |
| _____ | Facsimile |
| _____ | E-File |

on this the 3rd day of ~~July~~ August, 2007.

*Candace Hudson*

OF COUNSEL

cc:     Michael Cohan
        HILL, HILL, CARTER, FRANCO,
        COLE & BLACK, P.C.
        Post Office Box 116
        Montgomery, AL 36101

13

# Exhibit B

# ELY & ISENBERG, L.L.C.

### Attorneys at Law

600 Beacon Parkway West, Suite 104 • Birmingham, Alabama 35209
Telephone 205.313.1200 • Facsimile 205.313.1201

E-mail Address: CHudson@elylawllc.com

Candace L. Hudson

September 17, 2007

Michael Cohan
HILL, HILL, CARTER, FRANCO,
COLE & BLACK, P.C.
Post Office Box 116
Montgomery, AL 36101

Re:   *Continental Casualty Company v. Alabama Emergency Room Administrative
Services, P.C.*

Dear Mike:

As of the date of this letter, we have not received your client's responses to the interrogatories and requests for production issued by Continental Casualty. Please forward the responses within the next fourteen (14) days.

Thank you in advance for your cooperation and assistance in this regard. Should you have any questions please do not hesitate to call.

Sincerely,

Candace L. Hudson

CLH/km

# Exhibit C

**Candace Hudson**

| | |
|---|---|
| **From:** | Candace Hudson |
| **Sent:** | Friday, October 12, 2007 3:23 PM |
| **To:** | 'Mike Cohan' |
| **Cc:** | Brenen Ely |
| **Subject:** | AERAS |

Mike –


Now that the Court has entered the Protective Order, we would appreciate you forwarding AERAS's responses to the outstanding discovery within the next fourteen (14) days.


Also, please let us know the status on getting proposed dates for the depositions of the doctors and witnesses that we identified in our letter of August 15, 2007.


Candace


Candace L. Hudson
Ely & Isenberg, LLC
600 Beacon Parkway West
Suite 104
Birmingham, Alabama 35209
(205) 313-1200 telephone
(205) 313-1201 facsimile
chudson@elylawllc.com


Ely & Isenberg, LLC intends that this electronic message be used exclusively by the individual or entity to which it is addressed. This message may contain information that is attorney privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, be aware that any disclosure, dissemination, distribution or copying of this communication, or the use of its contents, is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (205) 313-1200 and delete the original message from your e-mail system. Thank you.

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.488 / Virus Database: 269.14.8/1066 - Release Date: 10/12/2007 11:10 AM

# Exhibit D



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **CONTINENTAL CASUALTY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:   2:07cv221-WHA** |
| | ) | |
| **ALABAMA EMERGENCY ROOM** | ) | |
| **ADMINISTRATIVE SERVICES, P.C.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION

COMES NOW the Defendant, Alabama Emergency Room Administrative Services, P.C., and responds to Plaintiff's Requests for Production as follows, subject to and in accordance with any and all protective orders entered in this matter:

1.  To the extent they exist in the possession of Defendant, see attached.

2.  To the extent they exist in the possession of Defendant, see attached.

3.  To the extent they exist in the possession of Defendant, see attached.

4.  To the extent they exist in the possession of Defendant, see attached.

5.  To the extent they exist in the possession of Defendant, see attached.

6.  To the extent they exist in the possession of Defendant, see attached.

7.  To the extent they exist in the possession of Defendant, see attached.

8.  To the extent they exist in the possession of Defendant, see attached.

9.  To the extent they exist in the possession of Defendant, see attached.

10. To the extent they exist in the possession of Defendant, see attached.

11. To the extent they exist in the possession of Defendant, see attached.

12.     To the extent they exist in the possession of Defendant, see attached.

13.     To the extent they exist in the possession of Defendant, see attached.

14.     To the extent they exist in the possession of Defendant, see attached.

15.     To the extent they exist in the possession of Defendant, see attached.

16.     To the extent they exist in the possession of Defendant, see attached.

17.     Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Further, this request seeks to obtain information that is protected as trade secrets and/or proprietary information, not otherwise discoverable. Further, this request seeks to delve into the personal and private matters involving a number of physicians and employees not parties to this action. Further, this request has absolutely nothing to do with the pending litigation and is clearly meant to harass, oppress and annoy Defendant.

18.     To the extent they exist in the possession of Defendant, see attached.

19.     Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Further, this request seeks to obtain information that is protected as trade secrets and/or propriortary information, not otherwise discoverable. Further, this request seeks to delve into the personal and private matters involving a number of physicians and employees not parties to this action. Further, this request has absolutely nothing to do with the pending litigation and is clearly meant to harrass, oppress and annoy Defendant.

20.     Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Further, this request seeks to obtain information that is protected as trade secrets and/or propriortary information, not otherwise

discoverable. Further, this request seeks to delve into the personal and private matters involving a number of physicians and employees not parties to this action. Further, this request has absolutely nothing to do with the pending litigation and is clearly meant to harrass, oppress and annoy Defendant.

21.     To the extent they exist in the possession of Defendant, see attached.

22.     To the extent they exist in the possession of Defendant, see attached.

23.     To the extent they exist in the possession of Defendant, see attached.

24.     Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Without waiving said objections, see attached.

25.     Not applicable.

26.     This information is readily available from the offices of the Alabama Secretary of State.

27.     To the extent they exist in the possession of Defendant, see attached.

28.     To the extent they exist in the possession of Defendant, see attached.

29.     Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Further, this request seeks to obtain information that is protected as trade secrets and/or proprietary information, not otherwise discoverable. Further, this request seeks to delve into the personal and private matters involving a number of physicians not parties to this action. Further, this request has absolutely nothing to do with the pending litigation and is clearly meant to harass, oppress and annoy Defendant.

30.     Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Further, this request seeks to obtain

information that is protected as trade secrets and/or proprietary information, not otherwise discoverable. Further, this request seeks to delve into the personal and private matters involving a number of physicians not parties to this action. Further, this request has absolutely nothing to do with the pending litigation and is clearly meant to harass, oppress and annoy Defendant.

31.    To the extent they exist in the possession of Defendant, see attached.

32.    Defendant objects to this request as it is vague, overly broad, overly burdensome and not reasonably calculated to lead to discoverable information. Further, this request seeks to obtain information that is protected as trade secrets and/or proprietary information, not otherwise discoverable. Further, this request has absolutely nothing to do with the pending litigation and is clearly meant to harass, oppress and annoy Defendant.

33.    To the extent they exist in the possession of Defendant, see attached.

34.    To the extent they exist in the possession of Defendant, see attached.

35.    To the extent they exist in the possession of Defendant, see attached.

36.    To the extent they exist in the possession of Defendant, see attached.

Respectfully submitted this the 29th day of October, 2007.


MICHAEL J. COHAN (ASB-6887-A56M)
Attorney for Defendant

OF COUNSEL:
Hill, Hill, Carter,
Franco, Cole & Black, P.C.
Post Office Box 116
Montgomery, Alabama 36101-0116
Telephone: (334) 834-7600
Facsimile: (343) 832-7419
Email: mcohan@hillhillcarter.com

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the above and foregoing upon all parties by U.S. Mail this the ___24th___ day of ___October___, 2007.

Brenen G. Ely, Esq.
Joel S. Isenberg, Esq.
Candace L. Hudson, Esq.
Ely & Isenberg, LLC
600 Beacon Parkway West
Suite 104
Birmingham, Alabama 35209

MICHAEL J. COHAN  (ASB-6887-A56M)

# Exhibit E

**Candace Hudson**

| | |
|---|---|
| **From:** | Candace Hudson |
| **Sent:** | Tuesday, October 30, 2007 11:51 AM |
| **To:** | 'Mike Cohan' |
| **Subject:** | AERAS |

Mike –


We received the responses to request for production and accompanying documents in the mail today.  However, we did not receive a copy of your client's sworn interrogatory answers.   Can you please email or fax them today?  Thanks.



Candace


Candace L. Hudson
Ely & Isenberg, LLC
600 Beacon Parkway West
Suite 104
Birmingham, Alabama 35209
(205) 313-1200 telephone
(205) 313-1201 facsimile
chudson@elylawllc.com


Ely & Isenberg, LLC intends that this electronic message be used exclusively by the individual or entity to which it is addressed.  This message may contain information that is attorney privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, be aware that any disclosure, dissemination, distribution or copying of this communication, or the use of its contents, is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (205) 313-1200 and delete the original message from your e-mail system.  Thank you.


No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.503 / Virus Database: 269.15.13/1099 - Release Date: 10/30/2007 10:06 AM

# Exhibit F

**Candace Hudson**

| | |
|---|---|
| **From:** | Mike Cohan [mcohan@hillhillcarter.com] |
| **Sent:** | Wednesday, November 14, 2007 11:17 AM |
| **To:** | Candace Hudson |
| **Subject:** | RE: AERAS |

I don't have these signed yet.  I hope to get today.  Mike


Michael J. Cohan

Hill, Hill, Carter, Franco, Cole & Black, P.C.

425 South Perry Street

Montgomery, Alabama 36104

(334) 834-7600

(334) 832-7419 [facsimile]

NOTICE:  This e-mail is from a law firm, Hill, Hill, Carter, Franco, Cole & Black, P.C. ("HHC"), and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail and any attachments from your computer, and do not copy or disclose this email or any attachments to anyone else.   If you are not an existing client of HHC, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to HHC in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of HHC, you should maintain its contents in confidence in order to preserve the attorney-client, work product and other privileges that may be available to protect confidentiality.

Although this email is believed to be free of any virus or other defects that might affect any computer system in which it is received, it is the responsibility of the recipient to ensure that it is virus free; HHC accepts no responsibility for any loss or damage arising in any way from its use.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to U.S. Treasury Regulations, we are now required to advise you that (1) unless explicitly stated above to the contrary, the contents and conclusions (if any) contained in this communication (including any attachments) are preliminary in nature and do not express a formal opinion contemplated by IRS Circular 230; (2) nothing contained in this communication (including any attachments) is intended to be used, or may be relied upon or used, by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (3) any statement contained in this communication (including any attachments) relating to any federal tax issue may not be used by any person to support the promotion, marketing of, or used to recommend any transaction or matter addressed in this communication.

1

From: Candace Hudson [mailto:chudson@elylawllc.com]
Sent: Tuesday, October 30, 2007 11:51 AM
To: Mike Cohan
Subject: AERAS


Mike –


We received the responses to request for production and accompanying documents in the mail today.  However, we did not receive a copy of your client's sworn interrogatory answers.   Can you please email or fax them today?  Thanks.


Candace


Candace L. Hudson
Ely & Isenberg, LLC
600 Beacon Parkway West
Suite 104
Birmingham, Alabama 35209
(205) 313-1200 telephone
(205) 313-1201 facsimile
chudson@elylawllc.com


Ely & Isenberg, LLC intends that this electronic message be used exclusively by the individual or entity to which it is addressed.  This message may contain information that is attorney privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, be aware that any disclosure, dissemination, distribution or copying of this communication, or the use of its contents, is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (205) 313-1200 and delete the original message from your e-mail system.  Thank you.

2

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.503 / Virus Database: 269.15.13/1099 - Release Date: 10/30/2007 10:06 AM


No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.503 / Virus Database: 269.15.31/1130 - Release Date: 11/14/2007 9:27 AM

# Exhibit G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **CONTINENTAL CASUALTY COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CASE NO.:   2:07cv221-WHA** |
| | ) |
| **ALABAMA EMERGENCY ROOM** | ) |
| **ADMINISTRATIVE SERVICES, P.C.** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES**

COMES NOW Defendant Alabama Emergency Room Administrative Services, P.C. (AERAS) and responds to Plaintiff's First Interrogatories, in order and as numbered in the interrogatories propounded by Plaintiff, as follows:

1.    For each requested Admission that you denied, please provide a detailed explanation of the reason for each such denial and state what you assert to be the facts relevant to each request.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, the following is provided as to each denied request for admission, referenced by the requests as numbered in the Requests for Admissions to Defendant:

3.  The policy at issue was cancelled by AERAS prior to May 3, 2006. Documents previously produced support these facts.

6.  While AERAS never submitted a claim to Plaintiff needing "service", the erroneous billing practices, claimed audits and service related to such were well below par. Documents previously produced support these facts.

7.  This is a contention of Plaintiff. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed "actual" premium has any merit. Documents previously produced support these facts.

8. This is a contention of Plaintiff. AERAS disputes that any legitimate and accurate "audit" was performed. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed "actual premium" has any merit. Documents previously produced and the deposition testimony of Tom Dyer support these facts.

9. This is a contention of Plaintiff. AERAS disputes that any legitimate and accurate "audit" was performed. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed "actual premium" has any merit. Documents previously produced and the deposition testimony of Tom Dyer support these facts.

10. This is a contention of Plaintiff. AERAS disputes that any legitimate and accurate "audit" was performed. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed "actual premium" has any merit. Documents previously produced and the deposition testimony of Tom Dyer support these facts.

11. AERAS paid sums to Plaintiff for what AERAS was told was the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. The amounts paid by AERAS are reflected in the documents previously produced and the deposition testimony of Tom Dyer.

12. This is a contention of Plaintiff. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. Insofar as Plaintiff contends that AERAS owes any further monies to it, AERAS disputes that premiums payments were "properly credited". Documents previously produced support these facts.

13. This is a contention of Plaintiff. AERAS disputes that any legitimate and accurate "audit" was performed. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed premium has any merit. Documents previously produced and the deposition testimony of Tom Dyer support these facts.

14. This is a contention of Plaintiff. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. Documents previously produced support these facts.

15. This is a contention of Plaintiff. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. Documents previously produced support these facts.

16. This is a contention of Plaintiff. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. Documents previously produced support these facts.

17. This is a contention of Plaintiff. AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. Documents previously produced support these facts.

2. Please state the full name, home and work addresses, and job title of the person or persons answering these interrogatories.

**RESPONSE:** Mark Edward Platt, RN. Mr. Platt may be contacted through counsel for AERAS. Mr. Platt is the Chief Operating Officer (COO) of AERAS.

3. Please state the names and addresses of all persons who have knowledge of any fact relating to the incidents made the basis of this lawsuit.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, the following is provided:

Mark Edward Platt, RN
Kelli D. Destin
Beppy Hassey
Ashley Rogers
Jeanie M. Shaw
Beebe R. Frederick, Jr.
John Moorehouse, MD
Any individual listed by Plaintiff in any discovery response
Any individual identified in any document produced by AERAS to Plaintiff
Any individual identified in any document produced by Plaintiff to AERAS

4.    As to each person named above, please describe in detail his/her knowledge of the facts regarding the claim made the basis of this lawsuit.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, the above individuals have knowledge of the issues relative to this lawsuit, including communications between the parties hereto, as well as the business structure and operations of AERAS. The documents previously produced to Plaintiff by AERAS reflect the knowledge of each individual listed.

5.    Please identify and describe in detail each and every communication that AERAS or any of its representatives had had with Continental Casualty or any of its employees, agents, or representatives regarding the incident made the basis of this lawsuit, specifically identifying the person(s) between whom each communication was made, the manner of communication, and the substance of each communication.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, this has been produced previously to Plaintiff.

6.    Please identify and describe in detail each and every communication that AERAS or any of its employees, agents, or representatives have had with its insurance agent or any other person not a party to this lawsuit regarding the incidents made the basis of this lawsuit, specifically identifying the person(s) with whom AERAS or its employees, agents, or representatives communicated and the substance of each such communication.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, this has been produced previously to Plaintiff.

7.    If AERAS claims that the Workers' Compensation insurance failed to conform to that which AERAS requested, please identify and describe in detail how such insurance failed to conform and state the method by which these alleged failures were communicated to Continental Casualty.

**RESPONSE:** While AERAS never submitted a claim to Plaintiff, the erroneous billing practices, claimed audits and service related to such were well below par. Documents previously produced support these facts and clearly identify communications between the parties hereto.

8.      If AERAS claims any defect or problem in any of the insurance services provided,

please state the nature of each alleged defect or problem, the date on which each defect or problem

was first observed by AERAS, and identify the person who first observed the alleged defect or

problem.

**RESPONSE:**  While AERAS never submitted a claim to Plaintiff, the erroneous billing practices, claimed audits and service related to such were well below par. Documents previously produced support these facts and clearly identify those individuals involved in such issues.

9.      If AERAS claims any defect or problem with the Workers' Compensation insurance

upon which this lawsuit is based, please state whether AERAS notified Continental Casualty of such

a problem, and, if so, please identify the date on which AERAS notified Continental Casualty of

such problem, the manner in which AERAS notified Continental Casualty, the person at AERAS

who communicated the notification to Continental Casualty, the substance or content of the

notification, and to whom the notification was given.

**RESPONSE:** While AERAS never submitted a claim to Plaintiff, the erroneous billing practices, claimed audits and service related to such were well below par. Documents previously produced support these facts and clearly identify those individuals involved in such issues and the communications as between the parties hereto.

10.      Please identify each and every payment made by AERAS for the initial or final

premium amount for the Workers' Compensation coverage that is the basis of this lawsuit. Your

response should include the date and manner of each payment, and the recipient for same.

**RESPONSE:** This has been produced previously to Plaintiff.

11.      If AERAS has not paid, in full, the final premium amount that is the subject matter

of this litigation, please state your reason for not paying the full amount of the final premium that

has been invoiced to AERAS.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, this has been produced previously to Plaintiff. Further, AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed premium has any merit. AERAS disputes that any legitimate and accurate "audit" was performed. Documents previously produced support these facts.

12.    Please state the name and address of the person who is the custodian of books and records of AERAS.

**RESPONSE:** Kelli D. Destin. Ms. Destin may be contacted through counsel for AERAS.

13.    Please state the name and address of the person who maintains the payroll records of AERAS.

**RESPONSE:** Kelli D. Destin. Ms. Destin may be contacted through counsel for AERAS.

14.    Please state the name, job description, and monthly payroll amounts for each workers, employee, subcontractor and independent contractor for AERAS during the policy period of May 3, 2005 to May 3, 2006.

**RESPONSE:** This has been produced previously to Plaintiff.

15.    If AERAS claims that another company provided alternative coverage for its employees and/or subcontractors during the policy period of May 3, 2005 to May 3, 2006, please state the name and business address of the company providing alternative coverage, the policy number under which alternative coverage was provided, and identify the individual at said company with whom you had contact regarding the alternative coverage.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information.

16.    Please state the name and address of the insurance agent through whom AERAS

placed its workers' compensation coverage with Continental Casualty.

**RESPONSE:** The Frederick Agency, 624 South Perry Street, Montgomery, Alabama 36101.

17.    Please state whether AERAS has ever been a party to another other lawsuit, bankruptcy, claim for nonpayment of workers' compensation insurance premiums, dispute over premiums due on workers' compensation insurance, or dispute over calculation of workers' compensation insurance premiums.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information.

18.    Please state the amount that AERAS contends that it owes or owed under the workers' compensation policy issued to AERAS by Continental Casualty for the May 3, 2005 to May 3, 2006 policy period.

**RESPONSE:** Nothing other than that which has already been paid.

19.    Please identify and describe in detail how AERAS determined or calculated the amount that it identified in the previous interrogatory response.

**RESPONSE:** Defendant objects to this interrogatory in that it is vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, AERAS was told what the premium would be when it purchased the coverage from Plaintiff. AERAS paid the premium quoted for the coverage desired. AERAS disputes that any further premium is owed. AERAS disputes that the Plaintiff's claims of any additional owed premium has any merit.

20.    Please state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own workers' compensation policy.

**RESPONSE:** AERAS ensures that its employees are afforded workers' compensation coverage as required by and to the extent of the Alabama Workers' Compensation Act.

21.    Please state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own liability policy.

**RESPONSE:** It is unclear as to what is meant by "liability policy" and thus AERAS cannot respond to this interrogatory.

22.    Please state whether the work performed by each worker, employee, subcontractor,

and independent contractor of AERAS is performed pursuant to a written agreement.

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, applicable written agreements have previously been provided to Plaintiff by AERAS.

23.    Please describe fully and in detail the training that AERAS provides to each of its

workers, employees, subcontractors and independent contractors.

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information.

24.    Is each AERAS worker, employee, subcontractor, and independent contractor given

instructions in the way that work is to be performed?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, as to independent contractors, no.

25.    Does AERAS have the right to change the methods used by its workers, employees,

subcontractors, and independent contractors or to direct those persons on how to perform their work?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, as to independent contractors, no.

26.    Is each AERAS worker, employee, subcontractor, and independent contractor

required to follow a routine or a schedule established by AERAS?  If so, please identify and fully

describe the routine or schedule that must be followed by each.

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, as to independent contractors, no.

27.    Does each AERAS worker, employee, subcontractor, and independent contractor furnish a time record to AERAS?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. It is unclear as to what is meant by "time record" and thus AERAS cannot respond to this interrogatory.

28.    Who is responsible for providing all tools, equipment, supplies, and materials necessary for completion of work to the AERAS workers, employees, subcontractors, and independent contractors?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. It is unclear as to what is meant by "tools, equipment, supplies, and materials necessary for completion of work " and thus AERAS cannot respond to this interrogatory. Without waiving any objection, AERAS provides employees with that necessary to effectively complete their tasks. As to independent contractors, AERAS provides no tools, equipment, supplies or materials.

29.    What expenses are incurred by AERAS's workers, employees, subcontractors, and/or independent contractors in the performances of services for AERAS?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information.

30.    Please identify and fully describe all expenses for which AERAS reimburses its workers, employees, subcontractors, and/or independent contractors.

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information.

31.    Please identify and fully describe the type of pay that each worker, employee, subcontractor, and independent contractor receives.

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, all such individuals are paid via negotiable instruments with the equivalency of United States currency.

32.    Does AERAS guarantee a minimum amount of pay to its workers, employees, subcontractors, and independent contractors?

**RESPONSE:** No.

33.    Please identify and specifically describe all pension, bonuses, vacation, and/or sick pay available to AERAS's workers, employees, subcontractors, and independent contractors.

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information.

34.    Does AERAS deduct social security tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, AERAS complies with all local, state and federal tax laws.

35.    Does AERAS deduct federal income tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, AERAS complies with all local, state and federal tax laws.

36.    How does AERAS report the income of its workers, employees, subcontractors, and independent contractors to the Internal Revenue Service?

**RESPONSE:** Defendant objects to this interrogatory in that it is unduly burdensome, vague, overly broad, seeks privileged information and is not calculated to lead to discoverable information. Without waiving any objection, AERAS complies with all local, state and federal tax laws.

37.    Please identify by name and address all workers, employees, subcontractors, and/or independent contractors to whom AERAS provided medical malpractice or professional liability coverage during the policy period of May 3, 2005 to May 3, 2006.

**RESPONSE:** None.

38.    For each individual identified in AERAS's response to the preceding interrogatory, please state how said individual was classified for purposes of medical malpractice or professional liability coverage.

**RESPONSE:** Not applicable.

Submitted this the _28_ day of _November_ , 2007.

_Mark Edward Platt_
Mark Edward Platt, RN

STATE OF ALABAMA                    )

COUNTY OF MONTGOMERY                )

Before me, the undersigned authority in and for said State and County, personally appeared Mark Edward Platt, RN, who is known to me and having been duly sworn, deposes and says that the answers given in the foregoing are true and correct to the best of her knowledge, information and belief.

SWORN TO and SUBSCRIBED before me on this the _28th_ day of _November_, 2007.

_Barbara A Green_
NOTARY PUBLIC                    MY COMMISSION EXPIRES
My commission expires:_____    8-30-08

_[signature]_
MICHAEL J. COHAN (ASB-6887-A56M)
Attorney for Defendant

OF COUNSEL:
Hill, Hill, Carter,
Franco, Cole & Black, P.C.
Post Office Box 116

Montgomery, Alabama 36101-0116
Telephone: (334) 834-7600
Facsimile: (343) 832-7419
Email: mcohan@hillhillcarter.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the above and foregoing upon all parties by U.S. Mail this the _____ day of _____, 2007.

Brenen G. Ely, Esq.
Joel S. Isenberg, Esq.
Candace L. Hudson, Esq.
Ely & Isenberg, LLC
600 Beacon Parkway West
Suite 104
Birmingham, Alabama 35209

MICHAEL J. COHAN  (ASB-6887-A56M)

# Exhibit H

# ELY & ISENBERG, L.L.C.

**Attorneys at Law**

600 Beacon Parkway West, Suite 104 • Birmingham, Alabama 35209
Telephone 205.313.1200 • Facsimile 205.313.1201

E-mail Address: CHudson@elylawllc.com

Candace L. Hudson

November 30, 2007

**VIA FACSIMILE & U.S. MAIL**
Mr. Michael J. Cohan
HILL, HILL, CARTER, FRANCO,
COLE & BLACK, P.C.
Post Office Box 116
Montgomery, AL 36101

Re:  *Continental Casualty Company v. Alabama Emergency Room Administrative Services, P.C.*

Dear Mike:

We have received your client's Responses to Requests for production and unverified Responses to Interrogatories. This letter is written to request that AERAS reconsider certain of its objections and provide supplemental responses within the next fourteen (14) days.

As an initial matter, we note that the Responses to Interrogatories have not yet been verified (sworn) by your client. However, pursuant to your correspondence, we understand that you are working to obtain those and expect that the verified responses will differ very little from those originally provided.

Second, we note that AERAS asserts objections in response to many of the interrogatories and requests. However, AERAS failed to assert these objections within the period prescribed by the Federal Rules of Civil Procedure. Therefore, the objections are waived, and we request that AERAS provide the requested information and/or documents.

Further, if there is document that AERAS is withholding from production on the basis of privilege or work-product, we request that you provide us with a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5)(A).

In addition, we request supplementation of the following Interrogatories and Requests:

Interrogatory 3 requests AERAS to state that names and addresses of all persons with knowledge of any fact related to the incidents made the basis of this lawsuit. AERAS attempts to

Mr. Michael J. Cohan
November 30, 2007
Page 2

assert objections to the interrogatory and contends it is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. However, AERAS failed to timely object to this, or any other interrogatory or request. Thus, pursuant to Federal Rule of Civil Procedure 33(b)(4), AERAS waived its right to object to this interrogatory. Nevertheless, AERAS has provided some information in response to the interrogatory. Please clarify whether all information and/or documents responsive to this request have been produced. If not, and AERAS withheld any information on the basis of its objections, we request that AERAS immediately supplement the responses to provide the requested information.

Interrogatory 4 requests AERAS to describe in detail the knowledge that each person identified in response to Interrogatory 3 has regarding the incidents made the basis of this lawsuit. AERAS attempts to assert objections to the interrogatory and contends it is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. However, AERAS failed to timely object to this, or any other interrogatory or request. Thus, pursuant to Federal Rule of Civil Procedure 33(b)(4), AERAS waived its right to object to this interrogatory. Nevertheless, AERAS has provided some information in response to the interrogatory. If AERAS has provided all information or documents its has in its possession that respond to the interrogatory, please clarify your response to state this. However, to the extent that AERAS withheld any information on the basis of its objections, we request that AERAS immediately supplement the responses to provide the requested information.

Interrogatories 5 and 6 request AERAS to identify and describe in detail each and every communication that AERAS or any of its representatives had with Continental Casualty, any insurance agent, or any third party regarding the incidents made the basis of this lawsuit. Again, AERAS attempts to assert objections to these interrogatories and contends that they are vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. AERAS failed to timely object to this, or any other interrogatory or request. Thus, pursuant to Federal Rule of Civil Procedure 33(b)(4), AERAS waived its right to object to this interrogatory. Subject to its objections, AERAS states that the information has been produced. If all of the requested information has been provided, please advise us of this. However, if any information or documents were withheld by AERAS on the basis of its objections, we request that the responses be immediately supplemented to provide the requested information.

Interrogatory 11 requests that AERAS state its reasons for not paying the full amount of the final premium that has been invoiced in this matter. AERAS attempts to assert objections to the interrogatory on the basis that it is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. As set forth above, AERAS failed to timely object to this interrogatory and, therefore, its objections are waived. Nevertheless, AERAS provides some information in response to the interrogatory. Please clarify the answer to this interrogatory and state whether all requested information was provided in the response. If so, supplementation of this interrogatory response is not necessary. If, however, any information was withheld by AERAS on

Mr. Michael J. Cohan
November 30, 2007
Page 3

the basis of an objection, please immediately supplement the response to provide the requested information.

Interrogatory 15 seeks information regarding any alternative coverage that might have been available for AERAS's employees and/or subcontractors during the Continental Casualty policy period. AERAS asserts objections on the basis that the interrogatory is vague, overly broad, seeks privileged information, and not calculated to lead to discoverable information. However, AERAS failed to timely assert its objections to this interrogatory. Accordingly, pursuant to Federal Rule of Civil Procedure 33(b)(4), AERAS waived its objections to this interrogatory. Thus, we request that AERAS immediately supplement its responses to provide the requested information.

Interrogatory 17 requests AERAS to state whether it has been a party to any other lawsuit, bankruptcy, or claim for nonpayment of workers' compensation insurance premiums, dispute over premiums due on workers' compensation insurance, or dispute over calculation of workers' compensation insurance premiums. AERAS again attempts to assert objections and contends that the interrogatory is vague, overly broad, seeks privileged information, and not calculated to lead to discoverable information. However, AERAS failed to timely assert its objections to this interrogatory. Accordingly, pursuant to Federal Rule of Civil Procedure 33(b)(4), AERAS waived its objections to this interrogatory. Thus, we request that AERAS immediately supplement its responses to provide the requested information.

Interrogatory 19 asks AERAS to identify and describe how AERAS determined or calculated the amount of premium that it contends was appropriate for the workers' compensation policy in issue. In response, AERAS asserts objections and states that the interrogatory is vague, overly broad, seeks privileged information, and not calculated to lead to discoverable information. Subject to its objections, AERAS does, however, provide some information in response to the interrogatory. If all information responsive to the interrogatory has been provided, please clarify your response to so state. If, however, information was withheld on the basis of the stated objections, said objections are waived by their untimely submission. Accordingly, we request that AERAS immediately provide all information and/or documents that might have been withheld.

Interrogatory 20 specifically requests that AERAS state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own workers' compensation policy. In response, AERAS simply states that it "ensures that its employees are afforded workers' compensation coverage as required by and to the extent of the Alabama Workers' Compensation Act." This answer is non-responsive. We request that AERAS immediately supplement its response to answer the question posed.

Interrogatory 21 specifically requests that AERAS state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own liability policy. In response, AERAS states that it cannot answer the interrogatory on the basis that

Mr. Michael J. Cohan
November 30, 2007
Page 4

it is unclear that is meant by "liability policy." Please allow this letter to clarify the request as follows: "Please state whether each AERAS worker, employee, subcontractor, and/or independent contractor is responsible for carrying his or her own commercial general liability and/or professional liability policy."

Interrogatory 22 asks AERAS to state whether the work performed by each worker, employee, subcontractor, and independent contractor of AERAs is performed pursuant to a written agreement. AERAS objects that the interrogatory is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. However, subject to its objections, AERAS provides a response to this interrogatory. Please clarify the response to indicate whether any information or documents were withheld on the basis of the asserted objections. If so, the objections were untimely and are, therefore, waived. Accordingly, we request that you immediately produce any and all information that may have been withheld.

Interrogatory 23 requests that AERAS describe the training that AERAS provides to its workers, employees, subcontractors, and independent contractors. Although AERAS attempts to assert objections on the basis that the interrogatory is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information, AERAS waived these objections by failing to timely assert any objection to the interrogatory. Therefore, we request that you provide a full and complete response to Interrogatory 23.

Interrogatories 24, 25, and 26 request that AERAS state whether its workers, employees, subcontractors, and independent contractors are given instructions or directions on how their work is to be performed or required to follow an AERAS-provided schedule or routine. In response to each of these interrogatories, AERAS asserts untimely objections on the basis that the interrogatories are vague, overly broad, seek privileged information, and are not calculated to lead to discoverable information. Subject to the objections, AERAS states that as to independent contractors, it does not instruct or direct their work or require them to follow a schedule or routine established by AERAS. The response does not, however, provide a full and complete response to the interrogatories as it does not include information regarding AERAS's workers, employees or subcontractors. As the objections to these interrogatories are untimely, they are waived. Accordingly, we request that AERAS provide full and complete responses to these interrogatories.

Interrogatory 27 requests AERAS to state whether AERAS's workers, employees, subcontractors, and independent contractors furnish time records to AERAS. AERAS asserts untimely objections on the basis that the interrogatories are vague, overly broad, seek privileged information, and are not calculated to lead to discoverable information. Moreover, AERAS states that it is unable to respond to the interrogatory as it is unclear what is meant by use of the phrase "time record." Thus, please allow this letter to clarify the request as follows: "Does each AERAS worker, employee, subcontractor, and independent contract furnish a time card, time sheet, or other form of written verified confirmation of hours worked to AERAS for the purpose of calculating

Mr. Michael J. Cohan
November 30, 2007
Page 5

payroll or remuneration for each such worker, employee, subcontractor, and independent contractor?" Please provide a full and complete response to the clarified interrogatory.

Interrogatories 29 and 30 request AERAS to identify those expenses that are incurred by AERAS's workers, employees, subcontractors, and independent contractors and those expenses that are reimbursed by AERAS. AERAS fails to answer the interrogatories. Instead, it attempts to assert objections on the basis that the interrogatories are vague, overly broad, seek privileged information, and are not calculated to lead to discoverable information. Pursuant to Federal Rule of Civil Procedure 33(b), the objections are untimely and, therefore, waived. Accordingly, please provide full and complete responses to these interrogatories.

Interrogatory 31 requests AERAS to identify and describe the type of pay that each worker, employee, subcontractor, and independent contractor receives. AERAS asserts untimely objections to this interrogatory on the basis that it is vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. Subject to these objections, AERAS states that all individuals are paid via negotiable instruments. Please allow this letter to clarify the foregoing interrogatory with respect to the term "type of pay." The interrogatory seeks information regarding whether employees, workers, subcontractors, and independent contractors are salaried, paid hourly, paid per project, or paid per a specific contract amount. Please reconsider your answer and provide a full and complete response to the interrogatory as revised.

Interrogatory 33 asks AERAS to identify and describe all pension, bonuses, vacation, and/or sick pay available to its workers, employees, subcontractors, and independent contractors. AERAS failed to answer this interrogatory. Instead, AERAS attempts to assert untimely objections and contends that the interrogatory is unduly burdensome, vague, overly broad, seeks privileged information, and is not calculated to lead to discoverable information. As AERAS did not timely assert its purported objections, the objections are waived pursuant to Federal Rule of Civil Procedure 33(b). Moreover, the requested information is relevant to which no applicable privilege applies. Accordingly, please provide a full and complete response to the interrogatory.

Interrogatory 34 requests that AERAS state whether it deducts social security tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors. AERAS first asserts untimely objections that the interrogatory is unduly burdensome, vague, overly broad, seeks privileged information and not calculated to lead to discoverable information. Subject to the purported objections, AERAS states that it "complies with all local, state and federal tax laws." The answer that has been provided is not responsive to the question posed. Moreover, the purported objections are waived by AERAS's failure to timely assert same. Accordingly, please provide a full and complete response to the interrogatory.

Interrogatory 35 requests that AERAS state whether it deducts federal income tax from the amounts it pays to its workers, employees, subcontractors, and independent contractors. AERAS

Mr. Michael J. Cohan
November 30, 2007
Page 6

again asserts untimely objections and contends that the interrogatory is unduly burdensome, vague, overly broad, seeks privileged information and not calculated to lead to discoverable information. Subject to the untimely objections, AERAS again states that it "complies with all local, state and federal tax laws." As with Interrogatory 34, the answer that has been provided with respect to this interrogatory is not responsive to the question posed. As the purported objections are deemed waived by AERAS's failure to timely assert same, we request that AERAS provide a full and complete response to the interrogatory that has been posed.

Interrogatory 36 requests that AERAS identify how it reports the income of its workers, employees, subcontractors, and independent contractors. As with the foregoing interrogatories, AERAS asserts untimely objections on the basis that the interrogatory is unduly burdensome, vague, overly broad, seeks privileged information and not calculated to lead to discoverable information. Subject to the objections, AERAS again states that it "complies with all local, state and federal tax laws." The answer is wholly non-responsive to the interrogatory. Moreover, AERAS's failure to timely assert any objection to the interrogatory constitutes waiver of the objections. Therefore, we request that AERAS provide a full and complete response to the interrogatory.

Requests for Production 17, 19, and 20 request production of AERAS's payroll ledger, disbursement journals, general ledger, books, or records kept in the usual course of AERAS's business pertaining to workers, employees, subcontractors, and/or independent contractors of AERAS for the policy period of May 3, 2005 to May 3, 2006. AERAS objects to the request as vague, overly broad, overly burdensome, and not reasonably calculated to lead to discoverable information. AERAS states further that the request seeks to obtain information that is protected as trade secret and/or proprietary information, not otherwise discoverable. Further, AERAS contends that the request seeks personal and private information involving physicians and employees who are not parties to this action. Finally, AERAS objects to producing the request information and states the request is not related to the pending litigation and is meant only to harass, oppress, and annoy AERAS.

Initially, please note that just as with each and every objection AERAS attempted to assert to the above-referenced interrogatories, AERAS's objections with respect to the requests for production were not asserted within the time prescribed by the Federal Rules of Civil Procedure. Accordingly, the objections are waived. Moreover, with respect to AERAS's concern regarding maintaining the confidentiality or privacy regarding the requested information, you are aware that the Court has entered a detailed Protective Order. Thus, as long as the produced documents are marked Confidential, the parties are prohibited from disseminating the information to third parties. Finally, the requested information consists of documents that AERAS would have been compelled to produce to Continental Casualty regardless of this litigation. Accordingly, as the requested documentation is relevant information to which no timely objection has been asserted, we respectfully request that the information be produced.

Mr. Michael J. Cohan
November 30, 2007
Page 7

Request for Production 24 seeks production of all federal and state income tax filings for
AERAS for the years 2000 to the present. AERAS asserts untimely objections on the basis that the
request is vague, overly broad, overly burdensome, and not reasonably calculated to lead to
discoverable information. Subject to the objections, AERAS has produced its 941 Employer's
Quarterly Tax Returns for the last 3 quarters of 2005 and the first 2 quarters of 2006. However, this
is an incomplete response to the request. Because the request seeks relevant information to which
no timely objection was asserted, please produce copies of AERAS's federal and state income tax
filings for the years 2000 to the present, which include, but are not limited to, any Form 1120 or
1120-S tax returns filed by AERAS for the years 2000 to the present.

Requests for Production 29 and 30 seek the personnel files and applications of any physician
that performed work or services on behalf of AERAS pursuant to its agreements with any Baptist
hospital during the period of May 3, 2005 to May 3, 2006. AERAS objects to the request as vague,
overly broad, overly burdensome, and not reasonably calculated to lead to discoverable information.
AERAS states further that the request seeks to obtain information that is protected as trade secret
and/or proprietary information, not otherwise discoverable. Further, AERAS contends that the
request seeks personal and private information involving physicians and employees who are not
parties to this action. Finally, AERAS objects to producing the request information and states the
request is not related to the pending litigation and is meant only to harass, oppress, and annoy
AERAS.

AERAS's objections with respect to the requests for production were not asserted within the
time prescribed by the Federal Rules of Civil Procedure. Thus, the objections are waived.
Moreover, with respect to AERAS's concern regarding maintaining the confidentiality or privacy
regarding the requested information, the Court has entered a detailed Protective Order that will
protect dissemination of any "Confidential" information to third parties. As the information is
relevant information to which no timely or applicable objection was asserted, we request that
AERAS immediately produce the requested information.

Request for Production 32 requests that AERAS produce copies of each and every invoice
issued to any Baptist Hospital for emergency room physician services during the period of May 3,
2005 to May 3, 2006. AERAS objects to the request as vague, overly broad, overly burdensome, and
not reasonably calculated to lead to discoverable information. AERAS states further that the request
seeks to obtain information that is protected as trade secret and/or proprietary information, not
otherwise discoverable. AERAS also objects to producing the request information and states the
request is not related to the pending litigation and is meant only to harass, oppress, and annoy
AERAS. However, because the information is relevant to which no timely objection or applicable
objection was asserted, we respectfully request that AERAS produce the requested information.

Mr. Michael J. Cohan
November 30, 2007
Page 8

Please supplement AERAS's responses to the above-referenced interrogatories and requests for production within the next fourteen (14) days.

We look forward to receiving the responses. Should you have any questions or wish to further discuss the matters addressed in this letter, please contact Brenen or me.

Sincerely,

Candace L. Hudson

CLH/km

cc:    Brenen G. Ely

# Exhibit I

**Candace Hudson**

| | |
|---|---|
| **From:** | Mike Cohan [mcohan@hillhillcarter.com] |
| **Sent:** | Thursday, December 27, 2007 2:23 PM |
| **To:** | Candace Hudson; Brenen Ely |
| **Subject:** | AERAS |

Brenen and Candace:

Hope you both had a great Christmas.  Below, I will try to address your recent correspondence regarding discovery issues in this matter.

Regarding  the multiple depositions you requested, I would suggest you first depose Mark Platt and Dr. Moorehouse.  You may find you really don't want the others.  Of course, that's your call.  I am getting some January dates from all of them regardless, but suggest we at least start with Platt and Moorehouse.

You should have now received signed interrogatory answers.

As to the discovery request disputes, it seems the majority of your assertions are based upon AERAS waiving any objections under FRCP 33 for late submission of the responses.  I'm not going to address that and, if that is to be pursued, you are going to have to contact the Court on this one.

As to the specific responses and further issues taken to the same, I provide the following.  Those not listed below are omitted as it appears as though your only contention with them is as above with regard to Rule 33:

Interrogatories:
3.    Fully responded to.
4.    Fully responded to.
5.    Fully responded to.
6.    Fully responded to.
11.    Fully responded to.
19.    Fully responded to.
20.    Fully responded to.
21.    I assume for this and the following requests that "workers" and "employees" are the same. AERAS employees are not required to carry any such policies.  All others would be as required by practice, law or professional organizations or licensure boards to which they belong or are subject. This will obviously vary for each individual or type of profession they engage in.  Further, some carry such policies by personal choice.
22.    Fully responded to.
24.    AERAS employees are given such direction.  All others are not.
25.    AERAS employees are subject to such direction.  All others are not.
26.    AERAS employees are.  All others are not.
27.    Yes.
31.    AERAS employees are paid either salary or hourly wages.  All others are paid based upon agreement/contract.

1

Requests for Production:
17.    Fully responded to.
19.    Fully responded to.
20.    Fully responded to.
24.    AERAS stands by the objections and limitations on the response to this request.
29.    AERAS stands by the objections and limitations on the response to this request.
30.    AERAS stands by the objections and limitations on the response to this request.
32.    AERAS stands by the objections and limitations on the response to this request.

Let me know if you have any questions.  Mike



        Michael J. Cohan

        Hill, Hill, Carter, Franco, Cole & Black, P.C.

        425 South Perry Street

        Montgomery, Alabama 36104

        (334) 834-7600

        (334) 832-7419 [facsimile]

        NOTICE:  This e-mail is from a law firm, Hill, Hill, Carter, Franco, Cole & Black, P.C. ("HHC"), and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail and any attachments from your computer, and do not copy or disclose this email or any attachments to anyone else.   If you are not an existing client of HHC, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to HHC in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of HHC, you should maintain its contents in confidence in order to preserve the attorney-client, work product and other privileges that may be available to protect confidentiality.

        Although this email is believed to be free of any virus or other defects that might affect any computer system in which it is received, it is the responsibility of the recipient to ensure that it is virus free; HHC accepts no responsibility for any loss or damage arising in any way from its use.

        IRS CIRCULAR 230 DISCLOSURE: Pursuant to U.S. Treasury Regulations, we are now required to advise you that (1)  unless explicitly stated above to the contrary, the contents and conclusions (if any) contained in this communication (including any attachments) are preliminary in nature and do not express a formal opinion contemplated by IRS Circular 230; (2) nothing contained in this communication (including any attachments) is intended to be used, or may be relied upon or used,

by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (3) any statement contained in this communication (including any attachments) relating to any federal tax issue may not be used by any person to support the promotion, marketing of, or used to recommend any transaction or matter addressed in this communication.

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.516 / Virus Database: 269.17.11/1200 - Release Date: 12/27/2007 1:34 PM

# Exhibit J

# FREEDOM COURT REPORTING

| Page 1 | Page 3 |
|---|---|
| 1 IN THE UNITED STATES DISTRICT COURT | 1         STIPULATIONS |
| 2 FOR THE MIDDLE DISTRICT OF ALABAMA | 2      It is hereby stipulated and |
| 3      NORTHERN DIVISION | 3 agreed by and between counsel |
| 4 | 4 representing the parties that the |
| 5 CONTINENTAL CASUALTY COMPANY, | 5 deposition of THOMAS DYER is taken |
| 6    Plaintiff, | 6 pursuant to notice and stipulation on |
| 7 | 7 behalf of the Defendant; that all |
| 8 vs. CIVIL ACTION NO. 2:07cv221-WHA | 8 formalities with respect to |
| 9 | 9 procedural requirements are waived; |
| 10 ALABAMA EMERGENCY ROOM ADMINISTRATIVE | 10 that said deposition may be taken |
| 11 SERVICES, P.C., | 11 before Bridgette Mitchell, Shorthand |
| 12    Defendants. | 12 Reporter and Notary Public in and for |
| 13 | 13 the State of Alabama at Large, |
| 14   * * * * * * | 14 without the formality of a |
| 15      DEPOSITION OF THOMAS DYER, taken | 15 commission; that objections to |
| 16 pursuant to notice and stipulation on | 16 questions, other than objections as |
| 17 behalf of the Defendant, at Ely & | 17 to the form of the questions, need |
| 18 Isenberg, 600 Beacon Parkway West, | 18 not be made at this time, but may be |
| 19 Birmingham, Alabama, before Bridgette | 19 reserved for a ruling at such time as |
| 20 Mitchell, Shorthand Reporter and | 20 the deposition may be offered in |
| 21 Notary Public in and for the State of | 21 evidence or used for any other |
| 22 Alabama at Large, on August 30, 2007, | 22 purpose as provided for by the Civil |
| 23 commencing at 10:05 a.m. | 23 Rules of Procedure for the State of |

| Page 2 | Page 4 |
|---|---|
| 1      APPEARANCES | 1 Alabama. |
| 2 | 2      It is further stipulated and |
| 3 | 3 agreed by and between counsel |
| 4 FOR THE PLAINTIFF: | 4 representing the parties in this case |
| 5 Brenen Ely, Esquire | 5 that the filing of the deposition of |
| 6 ELY & ISENBERG | 6 THOMAS DYER is hereby waived and that |
| 7 600 Beacon Parkway West, Suite 104 | 7 said deposition may be introduced at |
| 8 Birmingham, Alabama 35209 | 8 the trial of this case or used in any |
| 9 | 9 other manner by either party hereto |
| 10 | 10 provided for by the Statute, |
| 11 FOR THE DEFENDANT: | 11 regardless of the waiving of the |
| 12 Michael J. Cohan, Esquire | 12 filing of same. |
| 13 HILL, HILL, CARTER, FRANCO, | 13      It is further stipulated and |
| 14    COLE & BLACK | 14 agreed by and between the parties |
| 15 425 South Perry Street | 15 hereto and the witness that the |
| 16 Montgomery, Alabama 36101 | 16 signature of the witness to this |
| 17 | 17 deposition is hereby waived. |
| 18 | 18 |
| 19 | 19      INDEX |
| 20 | 20 |
| 21 | 21 EXAMINATION         Page |
| 22 | 22 By Mr. Cohan.................... 6 |
| 23 | 23 |

## 367 VALLEY AVENUE
### (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 21

1    information sent out to the insured
2    at that point in time?
3    A. I believe that's it.
4    Q. Do you then physically go to the
5    location of the insured?
6    A. Yes.
7    Q. Prior to going to the location of the
8    insured, is there any other
9    information that's exchanged between
10   you and the insured?
11   A. No.
12   Q. What you do when you get to the
13   location of the insured?
14   A. First thing would be ask for the
15   contact person at the insured's
16   office.
17   Q. Who was the contact person with
18   regard to AERAS?
19   A. Ms. Ashley Rogers.
20   Q. What do you do next?
21   A. Examine the records that she had
22   prepared for me in advance.
23   Q. How would Ms. Rogers, or anybody,

Page 22

1    know what records were to be
2    prepared?
3    A. From the appointment letter that was
4    sent to her.
5    Q. What records do y'all request?
6    A. Payroll records, 941s, state
7    unemployment reports, a detailed
8    general ledger, income tax returns.
9    There are several documents on the
10   appointment letter.
11   Q. What is a preliminary audit?
12   A. Preliminary audit is conducted within
13   ninety days of policy inception.
14   Q. Who conducts that?
15   A. The auditor.
16   Q. Would that be you?
17   A. Yes.
18   Q. Did you conduct a preliminary audit
19   with regard to AERAS?
20   A. Yes.
21   Q. Let me back up, then.  Tell me what a
22   preliminary audit entails.
23   A. It entails the same examination of

Page 23

1    records as a final audit, and the
2    purpose is to verify the estimates
3    are in line with what's going to be
4    actual by projection and the correct
5    class codes are on the policy.
6    Q. When did you conduct a preliminary
7    audit with regard to AERAS?
8    A. I don't know the exact date.
9    Q. Is that contained in anything that's
10   in Exhibit 2?
11   A. No.
12   Q. Do you receive notification of a
13   preliminary audit the same way you
14   describe a final audit?
15   A. Yes.
16   Q. Same information given to you?
17   A. Yes.
18   Q. Do you actually go onsite for a
19   preliminary audit?
20   A. Yes.
21   Q. Who is Hilda Rodriguez?
22   A. Underwriter.
23   Q. Do you have any -- well, tell me how

Page 24

1    she is involved in the audit process,
2    if at all.
3    A. She's not really involved in the
4    audit process.
5    Q. Who takes the initial information
6    regarding determining the estimates
7    and class codes?
8    A. From the original application.
9    Q. Do you know what supplementary
10   underwriting is?
11   A. No.
12   Q. Are you provided any information from
13   the underwriting department other
14   than what you receive on your work
15   assignment list prior to any kind of
16   audit?
17   A. Sometimes I do.
18   Q. Were you in this case with regard to
19   AERAS?
20   A. I don't believe so.
21   Q. What information did you review
22   onsite with regard to the preliminary
23   audit?

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 25

1 A. Payroll journal, 941s, state
2 unemployment returns, detailed
3 general ledger.
4 Q. And what are you looking for when you
5 review these things?
6 A. Remuneration for people that work for
7 the named insured.
8 Q. Tell me what the class codes are.
9 A. Class codes describe a business and
10 the duties of employees.
11 Q. What class codes were assigned to
12 AERAS prior to your audit?
13 A. Without the policy, I can't tell.
14 Q. I'll show you what I'll mark as
15 Defendant's Exhibit 3. Let's see if
16 that helps you determine what the
17 class code were.
18     (Defendant's Exhibit 3 was
19     marked for identification
20     and is attached to the
21     original of the transcript.)
22 A. No.
23 Q. What were the class codes determined

Page 26

1 to be after your audit, if there were
2 any?
3 A. 8833.
4 Q. What does 8833 indicate?
5 A. Hospital.
6 Q. Are there class codes for the
7 individual employees or just to the
8 business as a whole?
9 A. 8833 is attached to Exhibit No. 2,
10 Scopes Manual, and it gives a
11 description of the employees that
12 would be assigned to 8833.
13 Q. Just so it's clear when we're looking
14 at this later, you're talking about a
15 document that says Scopes Manual at
16 the top right-hand corner?
17 A. Correct.
18 Q. What particular page are you on?
19 There's fax page numbers at the top
20 right-hand corner that may help.
21 A. Thirty-five.
22 Q. When you're conducting an audit, are
23 you looking to the individual

Page 27

1 employees of the business?
2 A. Regarding classifying employees, you
3 don't classify each individual
4 employee. You classify the business.
5 And within that business, they have
6 what they call standard exceptions,
7 which are standard to every business
8 such as clerical employees, outside
9 sales employees, drivers, and
10 draftspersons.
11 Q. What do you mean by "standard
12 exceptions"?
13 A. Those are common to most businesses,
14 the four exceptions that I've listed,
15 and, therefore, you would separately
16 classify them unless the class code
17 that describes the business addresses
18 those four types of standard
19 exceptions.
20 Q. How do you determine, or how did you
21 determine, that AERAS was a class
22 8833?
23 A. From the type of services they

Page 28

1 perform.
2 Q. And you stated that 8833 is a
3 hospital?
4 A. Yes.
5 Q. What is it about AERAS that led you
6 to determine that they were a
7 hospital?
8 A. They provide emergency room
9 physicians and staff at the --
10 several local hospitals in
11 Montgomery.
12 Q. Which staff is it that you determined
13 that AERAS provides to local
14 hospitals?
15 A. Nurse practitioners, physicians
16 assistants, and emergency room
17 doctors.
18 Q. Did you have a list of actual
19 individuals that met those
20 classifications that you just
21 described?
22 A. No, I don't, not a complete list.
23 Q. Did you look as to whether or not

7 (Pages 25 to 28)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 29

1    there was any differentiating between
2    whether these physicians and staff
3    were employees versus independent
4    contractors?
5   A. Yes.
6   Q. Tell me what you did to look into
7    that or make any determination with
8    regard to whether they were or were
9    not employees versus independent
10   contractors.
11   A. Reviewing records provided by the
12    insured and questions asked of the
13    insured.
14   Q. What specific records did you review
15    from the insured?
16   A. Year-to-date earnings, records for
17    each of the emergency room doctors,
18    the general ledger.
19   Q. Anything else?
20   A. I believe that was it that I actually
21    looked at.
22   Q. What is it in the earnings records
23    that led you to determine that the

Page 30

1    doctors were employees?
2   A. From the total amount that was paid
3    to the doctors, there are several
4    items that were deducted from the
5    gross pay, which led to a bottom
6    figure, or net pay, that was actually
7    the check written to the doctors.
8   Q. What things that were deducted led
9    you to believe that the doctors were
10   employees versus independent
11   contractors?
12   A. From the gross pay, malpractice
13    insurance was withheld, health
14    insurance was withheld, dental
15    insurance was withheld, disability
16    insurance was withheld, cafeteria
17    deductions were made, and advances
18    were deducted. And APP fees, slash,
19    other were also deducted.
20   Q. Do you know what that means, APP fee?
21   A. No, I don't.
22   Q. Anything else with regards to the
23    earnings records that you reviewed

Page 31

1    that led you to believe that the
2    doctors were employees?
3   A. No.
4   Q. You also mentioned that you reviewed
5    a general ledger. What in the
6    general ledger led you to believe
7    that the ER doctors were employees?
8   A. The frequency of payments made to the
9    doctors.
10   Q. What is it about the frequency of
11    payments that has significance in the
12    determination as to whether or not
13    they're employees?
14   A. They were paid on a weekly or monthly
15    basis.
16   Q. And what difference does that make?
17   A. They are paid the same way as an
18    employee is paid, on a weekly or
19    monthly basis.
20   Q. Anything else from the general ledger
21    that led you to conclude that the
22    doctors were employees?
23   A. No.

Page 32

1   Q. You mentioned that you had asked
2    questions of the insured. Was that
3    of Ms. Rogers?
4   A. Yes.
5   Q. Did you talk to anybody else, to
6    AERAS, during your audit other than
7    Ms. Rogers?
8   A. I believe she was the only one.
9   Q. What questions were asked of
10   Ms. Rogers?
11   A. Who schedules the work for the
12    doctors.
13   Q. Any other questions pertinent to
14    determining whether or not doctors
15    were employees?
16   A. How the doctors are paid.
17   Q. Any other questions to Ms. Rogers
18    pertinent to determining the doctors
19    to be employees?
20   A. The times that the doctors are to
21    work.
22   Q. How is that different from schedule?
23   A. A schedule would be for the following

8  (Pages 29 to 32)

# FREEDOM COURT REPORTING

Page 33

1　example, thirty days, and the doctors
2　pick what day they're going to work.
3　And then within that day, they work
4　certain shifts, from 6 a.m. --
5　example, 6 a.m. to 3 p.m.
6　**Q. So the times the doctor worked would**
7　**be the shifts?**
8　**A. Yes.**
9　**Q. Schedule would be the days?**
10　A. Yes.
11　**Q. And you just mentioned the doctors**
12　**pick what days they worked. Was that**
13　**your understanding of how that worked**
14　**with AERAS?**
15　A. I believe it was a joint effort
16　between AERAS and the doctors.
17　**Q. Did you ever receive information that**
18　**the doctors would submit their**
19　**schedules and AERAS would compile**
20　**them according to what all they**
21　**received from the doctors?**
22　A. No.
23　**Q. You stated that you asked Ms. Rogers**

Page 34

1　**about how the doctors were paid.**
2　**Does that go back to the schedule of**
3　**payment that you mentioned earlier,**
4　**on the weekly and monthly basis?**
5　A. No.
6　**Q. Okay.  Tell me what you're referring**
7　**to when you say "how doctors are**
8　**paid."**
9　A. Ashley said that the doctors are paid
10　a percentage from the charges
11　incurred from the procedures that the
12　doctors perform on the patients.  And
13　the doctor is guaranteed to make a
14　minimum hourly fee if they don't see
15　any patients in that hour, and I
16　believe that fee was -- they were
17　guaranteed $110 an hour.
18　**Q. Is there some sort of guidelines or**
19　**chart or book or anything that you**
20　**refer to when you are determining**
21　**whether or not doctors such as this**
22　**are employees versus independent**
23　**contracts?**

Page 35

1　A. Yes.
2　**Q. And what is that?**
3　A. The State of Alabama, in their
4　regulations for workers' comp, they
5　state that Alabama goes by the IRS
6　guidelines in determining an
7　employer/employee relationship.
8　**Q. Regulations for workers' comp.  What**
9　**specifically are you referring to?**
10　A. The Alabama Worker's Comp Act.
11　**Q. Any particular section of the act**
12　**that you're referring to?**
13　A. 25-5-50, and under H.
14　**Q. And I believe you're referring to**
15　**Defendant's Exhibit No. 2, page**
16　**number, at the top, 25; is that**
17　**correct?**
18　A. Yes.
19　**Q. And you stated that that -- in your**
20　**opinion, that states that Alabama**
21　**goes by the IRS guidelines; correct?**
22　A. Yes.
23　**Q. And have you -- do you utilize the**

Page 36

1　**IRS guidelines in determining whether**
2　**someone is an employee versus**
3　**independent contractor?**
4　A. Yes.
5　**Q. And did you use that in your audit**
6　**with regard to AERAS?**
7　A. Yes.
8　**Q. What specifically in the IRS**
9　**guidelines do you utilize in**
10　**determining employee versus**
11　**independent contractor?**
12　A. There's approximately twenty
13　examples, or questions, that the IRS
14　sets out to determine whether the
15　person is an employee or independent
16　contractor.
17　**Q. Are those contained in Defendant's**
18　**Exhibit 2?**
19　A. Yes.  I'd say they're excerpts,
20　page 32.
21　**Q. You said they're excerpts.  Is there**
22　**another source of information from**
23　**the IRS that you rely on other than**

9  (Pages 33 to 36)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

## FREEDOM COURT REPORTING

Page 73

1    Relations, they're in -- they're over
2    the workers' compensation for
3    Alabama.
4    **Q. You're not required to maintain any**
5    **license to be an auditor in the state**
6    **of Alabama?**
7    A. No.
8    **Q. Is there any organization that you're**
9    **aware of that puts out any guidelines**
10   **with regard to auditing insurance**
11   **policies?**
12   A. Just the ones I listed previously,
13   PAAS, Scopes, put out by National --
14   NCCI.
15   **Q. That's who puts out Scopes?**
16   A. Yeah, National Council on
17   Compensation Insurance.
18   **Q. Any other organizations such as PAAS**
19   **or NCCI?**
20   A. That would be it.
21   **Q. Do you know Ms. Rodriguez personally?**
22   A. Just phone calls.
23   **Q. Do you know who she currently works**

Page 74

1    **for?**
2    A. As of today?
3    **Q. Yes.**
4    A. I assumed she still worked for
5    Travelers.
6    **Q. I'm done.**
7
8    (The deposition of Thomas Dyer
9    concluded at 12:05 p.m. on August 30,
10   2007.)
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 75

1    * * * * * * * * * * *
2    REPORTER'S CERTIFICATE
3    * * * * * * * * * * *
4    STATE OF ALABAMA
5    COUNTY OF MONTGOMERY
6    I hereby certify that the
7    above and foregoing proceeding was
8    taken down by me by stenographic
9    means, and that the content herein
10   was produced in transcript form by
11   computer aid under my supervision,
12   and that the foregoing represents, to
13   the best of my ability, a true and
14   correct transcript of the proceedings
15   occurring on said date at said time.
16   I further certify that I am
17   neither of counsel nor of kin to the
18   parties to the action; nor am I in
19   anywise interested in the result of
20   said case.
21
22
     Bridgette Mitchell
23   Reporter and Notary Public

19 (Pages 73 to 75)