IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO.: |
| vs. § | |
| § | 2:07-CV-221-WHA |
| § | |
| ALABAMA EMERGENCY ROOM § | |
| ADMINISTRATIVE SERVICES, P.C., § | |
| § | |
| Defendant. § | |

## MOTION FOR FINDINGS OF FACT AND ENTRY OF JUDGMENT

COMES NOW Plaintiff Continental Casualty Company ("Continental Casualty") and, pursuant to Federal Rule of Civil Procedure 52, moves this Honorable Court to enter findings of fact and judgment in favor of Plaintiff and against Defendant Alabama Emergency Room Administrative Services, P.C. ("AERAS"). As grounds for this Motion, Continental Casualty states as follows:

1. This declaratory judgment action arises from AERAS's non-payment of premiums for workers' compensation insurance coverage provided by Continental Casualty for the policy period of May 3, 2005 to March 16, 2006. [Doc.1].

2. In May of 2005, AERAS applied for a workers' compensation policy through the assigned risk plan that is administered by the National Council on Compensation Insurance ("NCCI").

3. NCCI assigned the risk to Continental Casualty, which issued a workers' compensation insurance policy to AERAS, policy number 6BS59UB-7603B64-6-05, for the policy period of May 3, 2005 to May 3, 2006. [Exhibit 36].

4. In its application for workers' compensation coverage, AERAS represented that it had five (5) "clerical office employees" and seven (7) "hospital: professional employees," which could make Continental Casualty liable to pay workers' compensation benefits under the policy. [Exhibit 35; Exhibit 135].

5. AERAS's application stated the estimated annual remuneration for the "clerical office employees was $230,665, while the estimated annual remuneration for the "hospital: professional employees" was $440,425. [Exhibit 35; Exhibit 135].

6. Based on the information provided by AERAS in its application, Continental Casualty estimated the annual premium for the policy at $21,271, which AERAS paid. [Exhibit 1; Exhibit 36; Exhibit 37].

7. The Continental Casualty policy, in pertinent part, provides:

**PART FIVE – PREMIUM**

. . . .

    B.    **Classifications**
Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

    C.    **Remuneration**
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. <u>This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:</u>
    1.    All your officers and employees engaged in work covered by this policy; and

2

> 2. <u>All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy.</u> If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.
>
> . . . .
>
> **E.  Final Premium**
> The premium shown on the Information Page, schedules, and endorsements is an estimate. <u>The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance.</u> If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy. . . .
>
> . . . .
>
> **G.  Audit**
> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. <u>We may conduct the audits</u> during regular business hours during the policy period and <u>within three years after the policy period ends.</u> Information developed by audit will be used to determine final premium. . . .

[Exhibit 36 at CNA0148 (bold in original, underline added)].

8.  Pursuant to the terms of the policy, Continental Casualty conducted a preliminary audit on July 5, 2005. [Exhibit 121, pp. 22-23, 63; Exhibit 15].

9.  Based upon the information provided at the audit and communications with AERAS, Continental Casualty determined that AERAS had fifteen (15) additional physicians who qualified

as "persons engaged in work that could make [Continental Casualty] liable" under the Workers Compensation Insurance portion of the policy. [Exhibit 3].

10. Therefore, on November 30, 2005, Continental Casualty amended the policy to reflect the estimated exposure under the policy, and issued a notice identifying the annual estimated premium for the policy to be $172,819, an increase of $151,548. [Exhibit 130; Exhibit 126; Exhibit 38].

11. AERAS disputed the audit results. [Exhibit 5; Exhibit 45].

12. However, because the information provided during and following the audit demonstrated that the physicians were "persons engaged in work that could make [Continental Casualty] liable" under the workers' compensation portion of the policy, Continental Casualty determined that its premium audit was correct. [Exhibit 13].

13. A final premium audit was conducted on May 4, 2006, and a final premium bill was sent to AERAS, identifying the audited premium as $151,573. [Exhibit 3; Exhibit 43].

14. After crediting AERAS's payment of the initial estimated premium of $21,271, Continental Casualty issued a premium adjustment notice, advising AERAS that the balance due under the terms of the policy was $130,302. [Exhibit 43].

15. On June 21, 2006, AERAS notified Continental Casualty that it was canceling its workers' compensation coverage effective March 16, 2006. [Exhibit 6].

16. The final audit of the policy was subsequently revised on January 26, 2007, and Continental Casualty assessed the policy as having an earned premium of $151,782, which slightly changed the balance due on the policy to $130,511. [Exhibit 1-2].

17. AERAS failed and/or refused to remit payment for the balance due in violation of the terms of the policy.

18. AERAS contends that its physicians are independent contractors. However, because the evidence in this case demonstrates that a question of fact exists as to the relationship between AERAS and its physicians, the AERAS physicians are "persons engaged in work that *could* make [Continental Casualty] liable" for workers' compensation benefits. See Wausau Gen. Ins. Co. v. Kim's Trucking, Inc., 289 Ill. App. 3d 201, 204, 682 N.E.2d 190, 192 (Ill. App. 1st Dist. 1997)(the court is not required to find "dispositive proof of liability, but, rather, merely the possibility of liability" for a workers' compensation claim in order for the alleged employee to fall within the risk insured). [See also Exhibit 36 at CNA0148].

19. Because the AERAS physicians are persons engaged in work that *could* make Continental Casualty for a workers compensation claim, the physicians fall within the risk insured by the policy.

20. Accordingly, the audited premium is due and owing.

21. Continental Casualty demands judgment in its favor, and against Defendant, in the amount of $130,511, plus any incidental damages to which it may be entitled.

22. Should the Court enter judgment in Continental Casualty's favor, Continental Casualty respectfully requests that it be permitted to present evidence to the Court regarding the extent of additional, incidental damages to which it may be entitled, including, but not limited to, pre-judgment interest and attorney fees.

22. This Motion is based upon the pleadings, the supporting Brief, Agreed Statement of Facts, and Agreed Submission of Exhibits filed concurrently herewith.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Continental Casualty Company respectfully requests that this Honorable Court enter findings of fact and judgment in favor of Plaintiff and against Defendant in the amount of $130,511. Plaintiff Continental Casualty Company further requests that following the entry of findings of fact and judgment, the Court permit Continental Casualty to present evidence regarding the additional, incidental damages to which it may be entitled, including pre-judgment interest and attorney fees.

Respectfully submitted,

*/s/ Candace Hudson*
Brenen G. Ely (0366-E54B)
Joel S. Isenberg (8855-N76J)
Candace L. Hudson (8314-N66H)
Attorneys for Plaintiff Continental Casualty Company

**OF COUNSEL:**
ELY & ISENBERG, L.L.C.
600 Beacon Parkway West, Suite 104
Birmingham, Alabama 35209
Telephone:   (205) 313-1200
Facsimile:   (205) 313-1201

## CERTIFICATE OF SERVICE

  I do hereby certify that a true and accurate copy of the foregoing has been on all parties of record by:

|     |                    |
| --- | ------------------ |
| _____ | Hand Delivery      |
| _____ | U.S. Mail          |
| _____ | Overnight Delivery |
| _____ | Facsimile          |
|   X   | E-File |

on this the 11th day of July, 2008.

                      *Candace Hudson*
                      OF COUNSEL

cc: Michael Cohan
   HILL, HILL, CARTER, FRANCO,
    COLE & BLACK, P.C.
   Post Office Box 116
   Montgomery, AL 36101